UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARD OF TRUSTEES OF THE DISTRICT 6 HEALTH PLAN,<br><br>                                  Plaintiffs,<br><br>                -against-<br><br>PINNACLE MANAGING CO., LLC; REALTY CORP., LLC, a/k/a 3647 REALTY CO., LLC, a/k/a 3657 REALTY CO., LLC, a/k/a 3647 AND 3657 REALTY CO., LLC; and WIENER REALTY, LLC,<br><br>                                  Defendants. | 07 Civ. 6391 (GBD) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO DISMISS COUNTERCLAIMS AND TO
<u>STRIKE FIRST AND SECOND AFFIRMATIVE DEFENSES</u>**

                                            BARNES, IACCARINO, VIRGINIA,
                                            AMBINDER & SHEPHERD, PLLC
                                              Charles R. Virginia (CV 8214)
                                              Marc A. Tenenbaum (MT 3426)
                                            Trinity Centre
                                            111 Broadway
                                            Suite 1403
                                            New York, New York 10006
                                            (212) 943-9080

August 4, 2008                                                Attorneys for Plaintiffs

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ................................................................... 1

ARGUMENT ............................................................................................................... 3

    I.    STANDARDS GOVERNING MOTIONS TO DISMISS
          AND TO STRIKE ....................................................................................... 3

    II.    THE EMPLOYERS DID NOT PLEAD FRAUD WITH
          PARTICULARITY .................................................................................... 3

    III.    ERISA PREEMPTS THE FRAUD CLAIMS AGAINST THE PLAN    6

          A.    Express Preemption ......................................................................... 6

          B.    Conflict Preemption ........................................................................ 6

    IV.    THE PLAN'S CLAIMS ARE TIMELY ................................................. 10

    V.    PLAINTIFFS HAVE THE CAPACITY TO SUE ................................. 11

CONCLUSION ......................................................................................................... 12

**INTRODUCTION AND BACKGROUND**

This is an action under sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, to collect contributions to the District 6 Health Plan (the "Plan") in accordance with the terms of collective bargaining agreements ("CBAs") between District 6, International Union of Industrial, Service, Transport, and Health Employees (the "Union") and defendants Pinnacle Managing Co., LLC; Realty Corp., LLC; and Wiener Realty, LLC (the "Employers"). The CBAs required the Employers to contribute to the Plan on behalf of all doormen, porters, and certain other categories of employees who worked at the Employers' apartment buildings at 111 Worth Street and 3647 and 3657 Broadway in New York City.

The original complaint, filed July 12, 2007, sought contributions in an unknown amount to be determined by a Court-ordered audit covering work performed on or after January 1, 2003, plus interest, liquidated damages, professional fees, and costs, because the Employers had refused to cooperate in a payroll audit. On October 15, 2007, the Employers filed an answer, a counterclaim for breach of contract, and various affirmative defenses. On March 31, 2008, the Plan filed a motion to dismiss the counterclaim and to strike the affirmative defense of setoff. That motion was never fully briefed because it became moot as the result of subsequent pleadings.

On June 5, 2008, the Plan filed an amended complaint seeking contributions of $237,775.00 for the period January 1, 2005 through September 30, 2007 (based on a payroll audit that the Employers permitted after the original complaint was filed) and additional contributions in an unknown amount to be determined by a Court-ordered audit covering work performed from June 1, 2001 through December 31, 2004, and from October 1, 2007 through the

present, plus interest, liquidated damages, professional fees, and costs.  On June 23, 2008, the Employers filed an answer to the Plan's amended complaint.  In that pleading, the Employers abandoned their original counterclaim for breach of contract and replaced it with new counterclaims against the Plan.  The Employers also filed third-party claims against the Union, which had not previously been a party to this action.  In addition, the Employers abandoned their setoff defense and replaced it with new affirmative defenses that the Plan "may lack the capacity to sue" and that the Plan's claims are barred by the applicable statute of limitations.

The gravamen of the Employers' new counterclaims is that the Plan allegedly conspired with the Union to defraud the Employers.  The counterclaims allege that the Union somehow "acts as agent" for the Plan. (Counterclaims, ¶1.)  The counterclaims further allege, among other things, that during contract negotiations with the Employers, the Union's president made false and misleading statements "designed to lure Employers into making monetary contributions [to the Plan] purportedly for medical coverage for Employers' bargaining unit employees when, in actuality, the Plan provided little to no coverage to such employees." (Counterclaims, ¶ 7.)

The instant motion is submitted solely on behalf of the Plan.  The Employers' counterclaims against the Plan should be dismissed for two independent reasons.  First, as discussed in Section II below, the Employers failed to plead fraud with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Second, as discussed in Section III below, the counterclaims are based on rules of state common law that are preempted by ERISA.

In addition, two of the Employers' three affirmative defenses are legally unsupportable and should be stricken from their answer.  The statute-of-limitations defense should be stricken for the reasons discussed in Section IV below, and the lack-of-capacity defense should be stricken for the reasons discussed in Section V below.

**ARGUMENT**

I. **STANDARDS GOVERNING MOTIONS TO DISMISS AND TO STRIKE**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only if "it appears beyond doubt that [the non-moving party] can prove no set of facts in support of his claim that would entitle him to relief." *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 101 (2d Cir. 2003). In evaluating a motion to dismiss, the Court should accept as true the non-moving party's factual allegations and draw all reasonable inferences in its favor. *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). Similarly, under Rule 12(f) of the Federal Rules of Civil Procedure, a motion to strike an affirmative defense should be granted only if it is legally insufficient and causes prejudice to the moving party. *Cohen v. Elephant Wireless, Inc.*, 2004 WL 1872421, at *2 (S.D.N.Y. Aug. 19, 2004). For example, "a court should strike a defense to eliminate the delay and unnecessary expense from litigating an invalid claim when it is insufficient as a matter of law." *Id.*

II. **THE EMPLOYERS DID NOT PLEAD FRAUD WITH PARTICULARITY**

As a threshold matter, the Employers' counterclaims should be dismissed because they contravene Rule 9(b) of the Federal Rules of Civil Procedure, which provides in pertinent part that "[i]n pleading fraud . . ., a party must state with particularity the circumstances constituting fraud." To satisfy that standard, the claimant must "specify the time, place, speaker, and content of the alleged misrepresentations." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001). "Broad allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)." *Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918, 1998 WL 406036 (2d Cir. Jun. 8, 1998).

In the instant case, the Employers allege that "[u]pon information and belief, the Plan, by and through the President of the Union, William Perry, knowingly made false and misleading statements of material fact during contract negotiations to the effect that the Plan would provide comprehensive medical coverage for Employers' bargaining unit employees." (Counterclaims, ¶ 2.)  Similarly, the Employers allege that "[u]pon information and belief, the Plan, by and through Union President Mr. Perry, knowingly made false and misleading statements of material fact and omitted to state material facts during contract negotiations concerning the Plan's compliance with all Labor Relations Management Act [sic], Employee Retirement Income Security Act, Internal Revenue Service and Department of Labor regulations and statutory requirements." (Counterclaims, ¶ 16.)

Thus, the Employers identify a speaker, William Perry, but they describe the content of his allegedly fraudulent statements only in the most general of terms, and they completely fail to identify the time and place of those statements.  The Employers allege that Perry made the statements "during contract negotiations," without specifying the "contract negotiations" to which they refer.  This case concerns several CBAs that were signed a number of years apart.  Therefore, it is impossible to discern the timing of Perry's alleged statements based solely on the allegation that he made them "during contract negotiations."

The timing of Perry's alleged statements is especially important because the Employers' counterclaims are premised on the notion that Perry uttered them at a time when he and the Union were agents of the Plan.  Perry is the president of the Union, but he is not a trustee of the Plan.  Indeed, Perry has not been a trustee of the Plan for a number of years.

Rule 9(b) requires the Employers to specify not only the time of Perry's alleged statements, but also the basis of their contention that Perry and the Union were the Plan's agents. "When an implied agency relationship is allegedly part of the fraud, 'the circumstances

- 4 -

constituting the fraud' on the part of the purported principal include both the facts constituting the underlying fraud and the facts establishing the agency relationship." *Kolbeck*, 923 F. Supp. at 569. *See also In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 540 F. Supp. 2d 759, 765 (S.D. Tex. 2007) ("[Wh]en agency is an element of a fraud claim, agency must be pleaded with particularity under Rule 9(b)."); *In re Lois/USA, Inc.*, 283 B.R. 382, 387 (Bankr. S.D.N.Y. 2002) ("where allegations of fraud are based on a claim of agency, the pleading of the alleged agency relationship must itself meet the requirements of Rule 9(b)"). Perry is the only person who is alleged to have made fraudulent statements on the Plan's behalf, but the counterclaims merely set forth general allegations that he and the Union were agents of the Plan. The counterclaims contain no factual allegations establishing the agency relationship. Hence, the counterclaims violate Rule 9(b).

Moreover, the Second Circuit has long held that "[a]llegations of fraud cannot ordinarily be based 'upon information and belief,' except as to 'matters peculiarly within the opposing party's knowledge.'" *Luce v. Edelstein*, 802 F.2d 49, 54 n.1 (2d Cir. 1986) (quoting *Schick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir. 1974)). "To satisfy Rule 9(b) in the latter instance, the allegations must be accompanied by a statement of facts upon which the belief is founded." *Luce*, 802 F.2d at 54 n.1 (citing *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)). *Accord DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). Paragraphs 2, 6, 16, and 18 of the counterclaims should be stricken because they are expressly based "[u]pon information and belief" and do not explain the foundation of the belief. Without those four paragraphs, the Employers' counterclaims completely collapse.

Ordinarily, a party whose claim is dismissed under Rule 9(b) should be given leave to file an amended pleading. However, in the instant case, an amended pleading would be futile for the reasons discussed below.

### III.   ERISA PREEMPTS THE FRAUD CLAIMS AGAINST THE PLAN

As a matter of substantive law, the Employers' common-law fraud claims against the Plan are preempted by ERISA in two separate ways.

#### A.   Express Preemption

First, section 514 of ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  Section 514(c)(1) of ERISA provides that "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State."  29 U.S.C. § 1144(c)(1).  The Supreme Court has repeatedly emphasized that section 514 of ERISA is "broadly worded" and "'expansive.'"  *Egelhoff v. Egelhoff*, 532 U.S. 141, 146 (2001) (citations omitted).  A state law "relates to" an employee benefit plan, and is thus preempted, "if it has a connection with or reference to such a plan."  *Id.* at 147 (citation and internal quotation marks omitted).  The Employers' counterclaims should be dismissed because the federal courts have made clear that ERISA preempts common-law claims of fraud that relate to employee benefit plans.  *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 47-48 (1987); *Adams v. AT&T Corp.*, 2007 WL 1655668, at *3 & n.5 (N.D.N.Y. Jun. 5, 2007); *Ratner v. Local 29 RWDSU Health & Welfare Fund*, 2001 WL 11072, at *2 (S.D.N.Y. Jan. 4, 2001); *Snyder v. Elliot W. Dann Co.*, 854 F. Supp. 264, 273 (S.D.N.Y. 1994); *Sandler v. Marconi Circuit Technology Corp.*, 814 F. Supp. 263, 265 (E.D.N.Y. 1993).

#### B.   Conflict Preemption

Second, the Employers' counterclaims are barred by general principles of conflict preemption.  Under these principles, a federal statute such as ERISA preempts state law not only "where compliance with both federal and state regulations is a physical impossibility," but also "where state law stands as an obstacle to the accomplishment and execution of the full purposes

- 6 -

and objectives of Congress." *Boggs v. Boggs*, 520 U.S. 833, 844 (1997). The theory underlying the counterclaims is at odds with section 403(c)(1) of ERISA, commonly know as the "anti-inurement" clause, which provides that the assets of an employee benefit plan "shall never inure to the benefit of any employer." 29 U.S.C. § 1103(c)(1). Congress prescribed "a number of limited exceptions" to this "sweeping prohibition," but none of those exceptions apply to the instant case. *Dumac Forestry Services, Inc. v. International Brotherhood of Electrical Workers*, 814 F.2d 79, 81 (2d Cir. 1987). Any rule of law authorizing the Employers' counterclaims would contravene section 403(c)(1) of ERISA by permitting assets of the Plan to inure to the benefit of the Employers. *See Frank L. Ciminelli Construction Co. v. Buffalo Laborers Supplemental Unemployment Benefit Fund*, 976 F.2d 834, 835 (2d Cir. 1992).

The Employers' counterclaims are also inconsistent with section 515 of ERISA, which provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms of such plan or such agreement." 29 U.S.C. 1145. The United States Court of Appeals for the Second Circuit has interpreted section 515 to impose "a limitation on the defenses available to an employer when sued by an employee benefit plan." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990). "Thus, once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Id.* This rule reflects Congress's determination that "benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." *Id.* Congress was very concerned about "the depletion of pension funds that would result if multiemployer plans were routinely forced to collect

contributions via litigation." *New York State Teamsters Conference Pension & Retirement Fund v. United Parcel Service, Inc.*, 382 F.3d 272, 280 (2d Cir. 2004). *See also Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1151-55 (7th Cir. 1989) (discussing at length section 515 and its legislative history).

In an action to collect delinquent contributions under section 515, the only two defenses that an employer may interpose are "(1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." *Benson*, 907 F.2d at 314 (citations omitted). Under this rule, fraud in the inducement is not a valid defense because it merely renders a contract voidable. *See, e.g., Benson*, 907 F.2d at 314; *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992); *Bricklayers and Allied Craftworkers Local 2 v. C.G. Yantch, Inc.*, 316 F. Supp. 2d 130, 146 (N.D.N.Y. 2003). Fraud in the inducement "occurs when a party is induced to assent to something he otherwise would not have." *Yantch*, 316 F. Supp. 2d at 146 (citations and internal quotation marks omitted). By contrast, fraud in the execution renders a contract void and is therefore a valid defense to an action under section 515 of ERISA. Fraud in the execution occurs where there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" *Id.* (quoting *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31-32 (2d Cir.1997)).

In the instant case, the Employers allege that the Union and the Plan conspired to dupe the Employers into entering into CBAs based on Perry's false and misleading representations about the Plans. (*See, e.g.,* Counterclaims, ¶¶ 2, 16.) These allegations, if true, may constitute fraud in the inducement, but they do not constitute fraud in the execution. Therefore, as a matter of law, these allegations are insufficient to defeat the Plan's claims for delinquent contributions under section 515 of ERISA. Under Rule 8(c)(2) of the Federal Rules of Civil Procedure, which

authorizes the Court to treat a counterclaim as an affirmative defense "if justice requires," the Employers should not be permitted to present an invalid affirmative defense under the guise of a counterclaim.

Furthermore, the theory underlying the Employers' counterclaims is inconsistent with ERISA's provisions regarding standing. The Employers allege that "the Plan would willfully and knowingly refuse to process participants' claims and would deny coverage for pretextual reasons." (Counterclaims, ¶ 6.) This is not a defense to a plan's claim for delinquent contributions due from an employer. ERISA does not authorize *employers* to file suit to redress a plan's alleged failure to pay benefits to participants. ERISA authorizes suits by employers only in very limited circumstances. *See, e.g.*, 29 U.S.C. § 1132(a)(8) (authorizing employers to sue to enforce certain statutory notice requirements); 29 U.S.C. § 1303(f)(1) (authorizing employers to sue the Pension Benefit Guaranty Corporation); 29 U.S.C. § 1451(a)(1) (authorizing employers to sue concerning pension plan withdrawal liability). Except in those circumstances, none of which are present here, employers have no standing to sue under ERISA. *See, e.g., Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees*, 717 F.2d 726, 730 (2d Cir. 1983); *Amalgamated Cotton Garment & Allied Industries Retirement Fund v. Youngworld Stores Group, Inc.*, 2001 WL 314560 (S.D.N.Y. Mar. 30, 2001).

Section 502(a)(1)(B) of ERISA specifically authorizes a "participant or beneficiary" to file suit "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Therefore, if the Plan improperly failed to pay health benefits to its participants who were employed by the Employers, then section 502(a)(1)(B) of ERISA would provide those individual participants with a mechanism to seek recovery of those benefits, after exhaustion of Plan remedies. *See, e.g., Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993).

The Supreme Court has "observed repeatedly that ERISA is a 'comprehensive and reticulated statute,' the product of a decade of study of the Nation's private employee benefit system." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (citations omitted).  The Court has "noted that ERISA's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'"  *Id.* (emphasis in original; citations and internal quotation marks omitted).  The Court has been "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text."  *Id.* (citations omitted).  Consequently, any rule of New York common law authorizing the Employers to prosecute their counterclaims against the Plan would be preempted by ERISA.[1]

## IV. THE PLAN'S CLAIMS ARE TIMELY

For their First Affirmative Defense, the Employers assert that "[t]he Plan's claims are barred, in whole or in part, by the applicable statute(s) of limitations."  (Answer, ¶ 35.)  That defense is legally invalid and should be stricken at the outset so that it will be unnecessary for the parties to incur the expense of litigating this issue later in the case.  This is an action under ERISA and the LMRA to collect unpaid contributions in connection with work performed from June 1, 2001, through the present.  There is a six-year statute of limitations in this type of case.  *See, e.g., New York State Teamsters Conference Pension & Retirement Fund v. Syracuse Movers, Inc.*, 2004 WL 2931663, at *5 (N.D.N.Y. Nov. 22, 2004); *Hanley v. Café des Artistes, Inc.*, 1999 WL 688426, at *7 (S.D.N.Y. Sep. 3, 1999); *NYSA-ILA Med. & Clinical Servs. Fund v. Catucci*, 1999 WL 592590, at *10 (S.D.N.Y. Jul. 30, 1999); *Hanley v. Aperitivo Restaurant Corp.*, 1998 WL 307376, at *7 (S.D.N.Y. Jun. 11, 1998).

---

[1] For the same reasons, the Employers have no valid claim against the Plan under federal common law.  "The authority of courts to develop a 'federal common law' under ERISA is not the authority to revise the text of the statute."  *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 259 (1993).

Section 2, paragraph 1 of the Plan's Contribution Collection and Payroll Audit Policy (the "Policy") provides that contributions for each month are due on the twentieth day of the following month. *See* Ex. 1 at 2. As a matter of law, the Employers' agreement to contribute to the Plan constitutes their consent to be bound by the Policy and all other rules governing the Plan. *See, e.g., New York State Teamsters Conference Pension and Retirement Fund v. Boening Brothers, Inc.*, 92 F.3d 127, 133 (2d Cir. 1996); *Plumbers Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1450 (11th Cir. 1991); *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990). Thus, the Employers' contributions for work performed during the earliest month at issue – June 2001 – were due on July 20, 2001. The Plan commenced this action on July 12, 2007, less than six years after those contributions were due. Under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, which the courts construe liberally, the Plan's 2008 amended complaint relates back to the 2007 filing date of the original complaint because both pleadings concern the same conduct, transaction, or occurrence. *See, e.g.*, *Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 86-87 (2d Cir. 1999); *Siegel v. Converters Transportation, Inc.*, 714 F.2d 213, 215-16 (2d Cir. 1983). Accordingly, the Plan's claims are timely.

### V.     PLAINTIFFS HAVE THE CAPACITY TO SUE

To further narrow the issues and conserve the resources of the parties and the Court, the Employers' Second Affirmative Defense should also be stricken. The Second Affirmative Defense asserts that "[t]he Plan is not a party and/or a third-party beneficiary and, therefore, may lack the capacity to sue." (Answer, ¶ 36.) The Plan's legal capacity to sue is governed by section 502(d)(1) of ERISA, which provides that "[a]n employee benefit plan may sue or be sued under this title as an entity." 29 U.S.C. § 1132(d)(1). However, the Second Affirmative Defense's reference to the "capacity to sue" is puzzling because the Plan "as an entity" is not

formally a party to this action. The named Plaintiffs, the Board of Trustees of the District 6 Health Plan, are fiduciaries of the Plan as defined in section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and hence are expressly authorized to sue on the Plan's behalf under section 502(a)(3) and (g)(2) of ERISA, 29 U.S.C. § 1132(a)(3) and (g)(2), to collect employer contributions due to the Plan under section 515 of ERISA, 29 U.S.C. § 1145.

The Employers expressly admit that they agreed to contribute to the Plan. (Counterclaims, ¶¶ 3, 9.) Indeed, the Employers admit not only that they *agreed* to contribute to the Plan, but also that they *contributed* to the Plan. (Counterclaims, ¶¶ 4, 5, 9, 10.) Under the LMRA, the Employers could not have contributed to the Plan unless there was a written agreement specifying "the detailed basis on which such payments are to be made." 29 U.S.C. § 186(c)(5)(B). Thus, the pleadings conclusively establish that the Employers agreed to contribute to the Plan, and ERISA expressly authorizes a plan's fiduciaries to sue to collect delinquent contributions that an employer agreed to make. Therefore, as a matter of law, Plaintiffs have the capacity to sue.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss Counterclaims and to Strike First and Second Affirmative Defenses should be granted.

Dated: New York, New York
   August 4, 2008

Respectfully submitted,

BARNES, IACCARINO, VIRGINIA,
AMBINDER & SHEPHERD, PLLC


By:_____/s/_____
  Charles R. Virginia (CV 8214)
  Marc A. Tenenbaum (MT 3426)
Trinity Centre
111 Broadway, Suite 1403
New York, New York 10006
(212) 943-9080

Attorneys for Plaintiffs