UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- X

BOARD OF TRUSTEES OF THE DISTRICT : 
6 HEALTH PLAN,

           :

        Plaintiff,

           :     No. 07 Civ. 6391 (GBD)

-against-

           :

PINNACLE MANAGING CO., LLC,
REALTY CORP., LLC, a/k/a 3647 REALTY
CO., LLC, a/k/a 3657 REALTY CO., LLC    :
AND WIENER REALTY, LLC,

           :

        Defendants.
------------------------------------------- X

BOARD OF TRUSTEES OF THE DISTRICT  :
6 HEALTH PLAN, DISTRICT 6
INTERNATIONAL UNION OF INDUSTRIAL  :
SERVICE, TRANSPORT AND HEALTH
EMPLOYEES,              :

       Plaintiffs-Third Party Defendant,    :

-against-                  :

PINNACLE MANAGING CO., LLC,
REALTY CORP., LLC, a/k/a 3647 REALTY
CO., LLC, a/k/a 3657 REALTY CO., LLC
AND WIENER REALTY, LLC,

        Defendants-Third Party Plaintiffs.
------------------------------------------- X

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
BOARD OF TRUSTEES OF THE DISTRICT 6 HEALTH PLAN'S MOTION
TO DISMISS DEFENDANTS' COUNTERCLAIMS AND MOTION TO STRIKE**

Joel E. Cohen, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173
(212) 547-5400
*Attorneys for Defendants*

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. AT&T Corp.*, No. 04-Civ-789, 2007 U.S. Dist. LEXIS 40869 (N.D.N.Y. Jun. 5, 2007)................................................................................................15

*Agathos v. Starlite Motel*, 977 F.2d 1500 (3d Cir. 1992)....................................................21

*Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49 (2d Cir. 1996) .............................9

*Bricklayers & Allied Craftworkers Local 2 v. C.G. Yantch, Inc.*, 316 F. Supp. 2d 130 (N.D.N.Y. 2003) ........................................................................................21

*Britton v. Gleason Work*, No. 07-Civ-6506 (T), 2008 U.S. Dist. LEXIS 61876 (W.D.N.Y. Aug. 8, 2008)................................................................................9

*Calemine v. Gesell*, No. 06-Civ-4736 (SJ)(RM), 2007 U.S. Dist. LEXIS 78067 (E.D.N.Y. Sept. 28, 2007)............................................................................22

*Caputo v. Pfizer, Inc.*, 267 F.3d 181 (2d Cir. 2001) ...........................................................11

*Carl Colteryahn Dairy, Inc. v. Western Pennsylvania. Teamsters & Employers Pension Fund*, 847 F.2d 113 (3d Cir. 1988) .......................................................18

*Compudyne Corp. v. Shane*, 453 F. Supp. 2d 807 (S.D.N.Y. 2006)............................12, 13

*DaPonte v. Manfredi Motors Inc.*, 335 F. Supp. 2d 352 (E.D.N.Y. 2004), aff'd, 157 Fed. Appx. 328 (2d Cir. 2005) .......................................................14, 16

*DiVittorio v. Equidyne Extractive Industrial, Inc.*, 822 F.2d 1242 (2d Cir. 1987)............10

*Federal Deposit Insurance Corp. v. FSI Futures, Inc.*, No. 88-Civ-0906 (PNL), 1990 U.S. Dist. LEXIS 2907 (S.D.N.Y. Mar. 16, 1990) .......................12, 13

*Geller v. County Line Automobile Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996).............14, 17, 25

*Gelles v. TDA Industrial, Inc.*, No. 90-Civ-5133 (MBM), 1991 U.S. Dist. LEXIS 3135 (S.D.N.Y. Mar. 19, 1991) ................................................................10, 11

*Grace v. Rosenstock*, No. 85-Civ-2039 (DGT), 1996 U.S. Dist. LEXIS 18463 (E.D.N.Y. Sept. 30, 1996)..............................................................................23

*Harrison v. Federal Pacific Credit Co.*, No. 05-Civ-727S (F), 2006 U.S. Dist. LEXIS 9278 (W.D.N.Y. Feb. 3, 2006) ...............................................................9

*Hetchkop v. Woodlawn At Grassmere, Inc.*, 116 F.3d 28 (2d Cir. 1997) ....................19, 20

*Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts*, 954 F.2d 299 (5th Cir. 1992) ...........................................................................17, 18

*Johnson v. Antioch University*, No. 91-0133-LFO, 1992 U.S. Dist. LEXIS 4931 (D.D.C. Apr. 15, 1992) ..................................................................................15

*Kaslof v. Global Health Alternatives, Inc.*, No. 98 Civ-7477 (EHN), 2000 U.S. Dist. LEXIS 21053 (E.D.N.Y. Jun. 29, 2000) .........................................10, 11

*Kwatcher v. Mass. Serv. Employees Pension Fund*, 879 F.2d 957 (1st Cir. 1989) ........................................................................................17, 18, 19

*Lehman Brothers Commercial Corp. v. Minmetals International*, No. 94-Civ-8301 (JFK), 1995 U.S. Dist. LEXIS 15185 (S.D.N.Y. Oct. 10, 1995).......................11

*McNamee v. Bethlehem Steel Corp.*, 692 F. Supp. 1477 (E.D.N.Y. 1988) ................15, 16

*New York State Teamsters Conference Pension & Retirement Fund v. Boening Brothers*, 92 F.3d 127 (2d Cir. 1996)....................................................................24, 25

*Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501 (9th Cir. 1984) ..............20

*Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir. 1989)........................................15

*Plucinski v. I.A.M. National Pension Fund*, 875 F.2d 1052 (3d Cir. 1989) ...............17, 19

*Riordan v. Nationwide Mutual Insurance Fire Insurance Co.*, 756 F. Supp. 732 (S.D.N.Y. 1990)........................................................................................9

*Sandler v. Marconi Circuit Tech. Corp.*, 814 F. Supp. 263 (E.D.N.Y. 1993).................15

*Sandler v. N.Y. News Inc.*, 721 F. Supp. 506 (S.D.N.Y. 1989).........................................15

*Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974)....................................10

*Sears Petroleum & Transport Corp. v. Ice Ban America, Inc.*, No. 99-Civ-704, 2004 U.S. Dist. LEXIS 6661 (N.D.N.Y. Apr. 15, 2004)...........................................11

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (2d Cir. 1983) ................................................14

*Snyder v. Elliot W. Dann Co.*, 854 F. Supp. 264 (S.D.N.Y. 1994)....................................15

*Textile Workers Pension Fund v. Findlay Industrial, Inc.*, No. 97-Civ-9277 (HB), 1998 U.S. Dist. LEXIS 17715 (S.D.N.Y. Nov. 10, 1998)...........................................22

*Towne v. National Life of Vermont, Inc.*, 130 F. Supp. 2d 604 (D. Vt. 2000)...................15

*Trustees of the ALA-Lithographic Pension Plan v. Crestwood Printing Corp.*, 141
    F. Supp. 2d 406 (S.D.N.Y. 2001) ..............................................................................21

*Valerio v. Phillips*, No. 02-Civ-903 (RJA)(VEB), 2007 U.S. Dist. LEXIS 86327
    (W.D.N.Y. Nov. 21, 2007)........................................................................................22

## STATUTES

29 U.S.C. § 1103(c)(1)..................................................................................................17

29 U.S.C. § 1144...........................................................................................................1, 2

FED. R. CIV. P. 8 ............................................................................................................12

FED. R. CIV. P. 9 .....................................................................................................1, 2, 9 – 12

FED. R. CIV. P. 15 ...................................................................................................1, 2, 9, 22

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT ..................................................................................................................... 9

    I.     DEFENDANTS HAVE AMENDED THEIR COUNTERCLAIMS PURSUANT TO RULE 15(A) TO MOOT PLAINTIFF'S MOTION TO DISMISS .................................................................................................. 9

    II.    DEFENDANTS HAVE PLED FRAUD WITH SUFFICIENT PARTICULARITY TO SATISFY RULE 9(B) ...................................... 9

          A.    Defendants Have Pled The Specific Time And Place Of Mr. Perry's Misrepresentations To Satisfy Rule 9(b). .................................... 11

          B.    Defendants Have Pled Mr. Perry's Agency Relationship To The Plan To Satisfy Federal Pleading Requirements. .................................... 12

    III.    DEFENDANTS' COUNTERCLAIMS ARE NOT PRE-EMPTED BY ERISA ........................................................................................................ 14

          A.    Defendants' Counterclaims Are Not Expressly Pre-Empted By ERISA. ................................................................................................ 14

          B.    Defendants' Counterclaims Do Not Conflict With ERISA. ..................... 16

                i.    Defendants Have Standing To Make Federal Common Law Fraud Claims Against Plaintiff. .................................. 17

                ii.    Defendants Have Pled Fraud In The Execution, Which Is A Valid Defense To An ERISA Action. ......................................... 19

    IV.    PLAINTIFF CANNOT RELY ON THE RELATION-BACK DOCTRINE BECAUSE THE AMENDED COMPLAINT CONTAINS EVENTS KNOWN AT THE TIME THE ORIGINAL COMPLAINT WAS FILED ........ 22

    V.    PLAINTIFF CANNOT SUE FOR CONTRIBUTIONS TO THE PLAN BECAUSE DEFENDANTS' EMPLOYEES NEVER RECEIVED THE BENEFITS THAT PLAINTIFF AND THE UNION AGREED TO PROVIDE ................................................................................................ 23

CONCLUSION .................................................................................................................. 25

**PRELIMINARY STATEMENT**

On August 4, 2008, Plaintiff Board of Trustees of the District 6 Health Plan ("Plaintiff")

filed a motion to dismiss Defendants Pinnacle Managing Co., LLC, Realty Corp. LLC a/k/a 3647

Realty Co., LLC, a/k/a 3657 Realty Co., LLC and Wiener Realty, LLC's (collectively,

"Defendants") counterclaims against Plaintiff.    Defendants' counterclaims were based on

fraudulent misrepresentations made by William Perry ("Mr. Perry"), President of the District 6

International Union of Industrial Service, Transport and Health Employees (the "Union") and a

former trustee of the District 6 Health Plan (the "Plan"), as an agent on behalf of both the Union

and the Plan.    Defendants contend that Mr. Perry made these misrepresentations to get

Defendants to enter into collective bargaining agreements ("CBA") that cover employees who

work at certain properties owned by Defendants, which included provisions that obligated

Defendants to contribute to medical benefit plans so as to provide benefits for Defendants'

employees – benefits that the Plan failed to provide.    More specifically, Plaintiff seeks to dismiss

Defendants' counterclaims because it claims that:    (i) Defendants have not pled fraud with

"particularity" as required by Rule 9 of the Federal Rules of Civil Procedure ("Federal Rules")

and (ii) Defendants' claims are pre-empted by the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1144.    In addition, Plaintiff also moved to strike Defendants' affirmative

defenses concerning the statute of limitations and Plaintiff's standing to assert delinquent

contribution claims in the context of this lawsuit.

In response to Plaintiff's motion to dismiss Defendants' counterclaims and pursuant to

Rule 15(a), Defendants have amended the counterclaims (the "Amended Counterclaims" or "Am.

CC") to provide Plaintiff with more detailed allegations that conform to the heightened pleading

requirements of Rule 9 of the Federal Rules, with the intention of mooting Plaintiff's concerns.[1] (Ex. A). In addition, Defendants contend that their counterclaims are not pre-empted by ERISA because: (i) the fraud claims do not "relate to" the Plan for purposes of pre-emption under 29 U.S.C. § 1144, (ii) Defendants are entitled to a federal common law remedy to recover their contributions because Defendants' employees never received the medical benefits that were promised to them by the Plan as part of the CBAs that are the *quid pro quo* for Defendants' contributions and (iii) Defendants have adequately pled "fraud in the execution," which is a permissible defense to an ERISA contribution claim. Moreover, Defendants contend that the statute of limitations affirmative defense is appropriate because the "relation-back" doctrine does not save certain untimely amendments contained in Plaintiff's First Amended Complaint. In addition, the affirmative defense based on Plaintiff's standing is appropriate because Defendants are entitled to discover the nature of Plaintiff's fraudulent role in securing Defendants' obligations to contribute to the Plan while failing to provide Defendants' employees with the bargained-for medical benefits for whom contributions were made.

Accordingly, Defendants respectfully request that this Court (i) accept Defendants' Amended Counterclaims *in lieu* of Defendants' Initial Counterclaims under Rule 15(a) of the Federal Rules, (ii) deny Plaintiff's motion to dismiss in its entirety and allow the parties to proceed to discovery concerning Defendants' Amended Counterclaims, and (iii) deny Plaintiff's motion to strike Defendants' affirmative defenses because Defendants have alleged adequate facts to survive a motion to strike.

---

[1] Defendants also include herewith the Affidavit of Joel E. Cohen, Esq., sworn to August 22, 2008, which appends as exhibits ("Ex. _") any documents referenced throughout Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss Defendants' Counterclaims and Motion to Strike Affirmative Defenses.

## STATEMENT OF FACTS

Reduced to its essence, and as detailed below, the Plan was a fraudulent enterprise by which Mr. Perry collected contributions from employers in return for a promise to provide medical benefits to their employees – when, in reality, the Plan failed to provide the bargained-for benefits to their employees. While, at this point, Defendants do not know what happened to the contributions they paid into the Plan for employee medical benefits, Defendants surmise that Mr. Perry and his Union cohorts may well have diverted these contributions for their own use. This suspicion is buttressed by the facts that: the Plan was put in trusteeship, the Union cannot seem to be located for purposes of serving the Third-Party Complaint (and, in fact, seems to have vanished off the face of the Earth) and that counsel for the Plaintiff admitted to the Court at the status conference on August 13, 2008 that he doubts the Union will be cooperating with Plaintiff. This much Defendants do know – they made contributions to a medical benefit plan for their employees that, as it turned out, *did not provide the promised medical benefits*.[2]

In or about December 2002, the Union, represented by William Perry ("Mr. Perry"), who was also the sole Union trustee of the Plan, entered into negotiations with Joel S. Wiener ("Mr. Wiener"), the Owner of Defendant Pinnacle Managing Co., LLC ("Pinnacle"), for a CBA to cover the employees working in Pinnacle's property located at 111 Worth Street (hereinafter, "Worth Street"). (Ex. A, Am. CC ¶3). As part of the month-long negotiations leading to the execution of the CBA for Worth Street (hereinafter, the "Worth CBA"), Mr. Perry represented to Mr. Wiener that Defendants could make contributions to the Plan to provide Defendants' employees who were working at Worth Street with comprehensive medical benefits. (Id. at ¶4).

---

[2] In the event that the Union or the Plan dispute the fact that Defendants' employees at 111 Worth Street, 3647 Broadway or 3657 Broadway received medical benefits from the Plan for the period of time covered by the First Amended Complaint, Defendants challenge Plaintiff to produce records that show that medical bills were actually paid for by the Plan for Defendants' employees during this time period.

During December 2002, Mr. Perry also represented to Mr. Wiener that the Plan was in compliance with various federal and state regulations, including those promulgated by the Labor Management Relations Act, ERISA, the Internal Revenue Service and the Department of Labor. (Id. at ¶40). Thus, Mr. Wiener executed the Worth CBA on December 30, 2002 in reliance on Mr. Perry's statements concerning the existence of the Plan to provide medical benefits for Defendants' employees and the Plan's compliance with these regulatory schemes. (Id. at ¶¶7, 41; Ex. B). The Worth CBA stated that Defendants would make contributions to *a* health plan for Defendants' employees (and could elect to change the plan after consultation with the Union), but it did not specify that the contributions had to specifically inure to the Plan. (Id. at ¶5; Ex. B). Moreover, the Worth CBA did not incorporate by reference any trust agreements, audit provisions or audit policies. (Id. at ¶6; Ex. B). However, Defendants began making contributions to the Plan as the benefits provider they had chosen. (Ex. A, Am. CC ¶¶27-28).

Throughout the course of negotiating the Worth CBA in December 2002, Mr. Wiener always met with Mr. Perry at the shared office of the Union and the Plan, which, at that time, was located on West 31st Street between Seventh and Eighth Avenues in Manhattan. (Id. at ¶8). Mr. Perry consistently represented to Mr. Wiener that the Union and the Plan were the same organization, and Mr. Perry never gave Mr. Wiener any cause to assume that these "entities" were anything other than one organization. (Id. at ¶9). In fact, Mr. Perry represented that fact on behalf of the Union and the Plan since he was the Union's appointed trustee of the Plan. (Id. at ¶10). In addition, both the Union and the Plan shared the same phone number and the same administrative employees -- Sandra Torres ("Ms. Torres") and another administrative assistant named "Clarabelle" -- such that when Mr. Wiener or Defendants' employees would call either the

Union or the Plan, either Ms. Torres or "Clarabelle" would answer the phone on behalf of both the Union and the Plan. (Id. at ¶11).

In or about December 2004, the Union, again represented by Mr. Perry, entered into negotiations with Mr. Wiener to extend coverage for the employees working in two of Pinnacle's other properties located at 3647 Broadway and 3657 Broadway (hereinafter, the "Broadway Buildings"). (Id. at ¶12). As part of the month-long negotiations leading to the execution of an extended CBA for the Broadway Buildings (hereinafter, the "Broadway CBA"), Mr. Perry again represented to Mr. Wiener that Pinnacle could make contributions to the Plan to provide Defendants' employees who were working at the Broadway Buildings with comprehensive medical benefits. (Id. at ¶13). During December 2004, Mr. Perry also represented to Mr. Wiener that the Plan was in compliance with various federal and state regulations, including those promulgated by the Labor Management Relations Act, ERISA, the Internal Revenue Service and the Department of Labor. (Id. at ¶42).

Thus, Mr. Wiener executed the extended Broadway CBA on January 8, 2005 in reliance on Mr. Perry's statements concerning the existence of the Plan, its intention to provide medical benefits to employees and the Plan's compliance with these regulatory schemes. (Id. at ¶¶14, 44; Ex. C). Unlike the Worth CBA, the Broadway CBA specifically referenced that Defendants would make contributions to the Plan for the purposes of providing Defendants' employees with health benefits. (Ex. A, Am. CC ¶15; Ex. C). However, the Broadway CBA still did not incorporate by reference any trust agreements, audit provisions or audit policies. (Ex. A, Am. CC ¶16; Ex. C). Again, during the December 2004 negotiations, Mr. Wiener was still under the premise that the Union and the Plan were the same entity because he would attend the negotiations at the shared office of the Union and the Plan, the same administrative assistants

were responsible for handling the affairs of both the Union and the Plan, and Mr. Perry always represented to Mr. Wiener that he was acting for both the Union and the Plan. (Ex. A, Am. CC ¶17). In fact, the shared office seemed to be run completely by Mr. Perry.[3] (Id. at ¶18).

Notably, on at least five occasions following the execution of the Worth CBA and the Broadway CBA (*i.e.*, since approximately January 2005), Mr. Perry asked Mr. Wiener if the Union and the Plan could together lease and share a retail store space at Worth Street. (Id. at ¶19). Although Mr. Wiener never rented the retail store space at Worth Street to Mr. Perry, the Union or the Plan, Mr. Wiener reasonably interpreted that Mr. Perry made such a request as an agent of one organization comprised of both the Union and the Plan.[4] (Id. at ¶20).

In addition to Mr. Wiener's experiences with Mr. Perry's representations concerning the relationship between the Union and the Plan, Anthony Guillermo Mota ("Mr. Mota"), one of Defendants' building employees who had medical problems from 2005 to 2007, had similar experiences to Mr. Wiener in dealing with the Union and the Plan to further support the notion that Defendants and their employees reasonably believed the Union and the Plan were, in fact, the same organization. (Id. at ¶23). For example, Mr. Mota would call the shared phone number for both the Union and the Plan numerous times between 2005 and 2007 regarding the Plan's failure to pay his health benefits. (Id. at ¶24). Regardless of whether Mr. Mota was calling the

---

[3] Indeed, the original named trustee who brought this lawsuit on behalf of Plaintiff – Nephty Cruz ("Mr. Cruz") – was also a Union trustee of the Plan (during some period of time) and a Union official whom Mr. Wiener and Defendants' employees used to interact with in the shared office and at Defendants' buildings. Curiously, Mr. Cruz's name was removed from the caption in this lawsuit when Plaintiff filed the First Amended Complaint on June 4, 2008. No explanation has been given for this change in caption, although it seems logical that Plaintiff did so to buttress its new argument that Mr. Perry and Mr. Cruz had no apparent authority to bind the Plan. Of course, as outlined above, Messrs. Perry and Cruz were both Union officials and Plan trustees, who worked for both entities simultaneously.

[4] In fact, during a meeting that took place in the Union and the Plan's shared office after the Broadway CBA had been executed (*i.e.*, after January 2005), Mr. Wiener expressed his concern to Mr. Perry that the Plan failed to pay the Defendants' employees medical benefits as promised by both CBAs. (Ex. A, Am. CC ¶21). In response to his concern, Mr. Perry told the clerical employees to "get the employees' medical cards straightened out," which reasonably implied to Mr. Wiener that Mr. Perry was acting as an agent on behalf of both the Union and the Plan. (Id. at ¶22).

"Union" or the "Plan" concerning his medical benefit issues, Ms. Torres would always answer the phone and tell Mr. Mota to send her his medical bills for reimbursement processing (but they were never reimbursed).  (Id. at ¶25).  Thus, at all pertinent times, Defendants and their employees were led to believe that the Union and the Plan were in essence the same entity, and that Mr. Perry and the employees working in the shared office were acting as employees and/or agents for both. (Id. at ¶26).

When Defendants received complaints from Mr. Mota and other employees who were covered by the Worth CBA and the Broadway CBA that the employees' medical claims were not being paid as promised to them, Defendants stopped making some contributions to the Plan because Defendants' employees were not receiving the benefits from the Plan as agreed-upon in the Broadway CBA and the Worth CBA. (Id. at ¶¶21, 24, 28).  Beginning in 2007, apparently the Plan was put in trusteeship and Mr. Perry and Mr. Cruz disappeared from the face of the Earth.  The Plan began requesting that Defendants submit to audits under the Plan's new Contribution Collection and Payroll Audit Policy that the Plan's trustees apparently adopted on May 1, 2006, after both the Broadway CBA and the Worth CBA had been executed by Mr. Wiener, which Policy was never signed by Defendants or incorporated into either of the CBAs. (Id. at ¶¶6, 16; Exs. B, C, D).   In fact, the existence of the Audit Policy was not even made known to Defendants by the Union or the Plan until long after the CBAs were in force.

Thereafter, Defendants refused to participate in the Plan's audit because the Plan had failed to provide medical benefits to Defendants' employees for years, causing Defendants to secure alternate medical benefits for their employees.  (Ex. A, Am. CC ¶¶28, 34).   Thus, Plaintiff, on behalf of the Plan, filed the instant lawsuit on or about July 12, 2007 to seek alleged delinquent contributions from Defendants since 2003 for the employees located at the Broadway

Buildings and Worth Street.[5]  On or about June 4, 2008, Plaintiff filed the First Amended Complaint which sought alleged delinquent contributions from Defendants since June 2001 for the same group of employees.  Defendants answered the First Amended Complaint and, in addition, filed counterclaims against the Plan as well as a Third-Party Complaint against the Union, alleging that Mr. Perry, as an agent of both the Union and the Plan, fraudulently misrepresented the purpose of the Plan to Defendants as well as the Plan's alleged compliance with various federal and state regulations to obtain Defendants' agreement to execute the Broadway CBA and the Worth CBA.[6]

In the counterclaims, Defendants asserted that the Plan failed to provide Defendants' employees with medical benefits, which caused Defendants to seek an alternate benefits provider for some employees, thereby costing Defendants hundreds of thousands of dollars in unwarranted contributions to the Plan because the Plan did not provide the promised medical benefits to the employees.  (Id. at ¶¶36, 48).  In response to the counterclaims, Plaintiff has filed the instant motion to dismiss Defendants' counterclaims, as well as the motion to strike two of Defendants' affirmative defenses concerning the statute of limitations and the standing of the Plan to assert contribution claims against Defendants.

---

[5] At that time, Defendants were represented by other counsel.  Defendants retained their current counsel in or about May 2008.
[6] After many attempts to serve the Union in person with the Third-Party Complaint, on July 8, 2008, Defendants mailed the Third-Party Complaint to the Union with an Acknowledgement of Service Form.  However, the Union has not yet returned the Acknowledgement Form, answered the Third-Party Complaint or entered an appearance in this case.

## ARGUMENT

### I. DEFENDANTS HAVE AMENDED THEIR COUNTERCLAIMS PURSUANT TO RULE 15(A) TO MOOT PLAINTIFF'S MOTION TO DISMISS

In response to Plaintiff's motion to dismiss Defendants' counterclaims against Plaintiff, Defendants have submitted herewith their Amended Counterclaims. (Ex. A). Under Rule 15(a) of the Federal Rules, Defendants, as a matter of right, may amend their counterclaims prior to the filing of any responsive pleading by Plaintiff. See FED. R. CIV. P. 15(a); see also Barbara v. N.Y. Stock Exch., Inc., 99 F.3d 49, 56 (2d Cir. 1996)(permitting amendment of complaint under Rule 15(a) prior to filing of responsive pleading). As Plaintiff's motion to dismiss does not qualify as a responsive pleading to Defendants' counterclaims, Defendants' Amended Counterclaims are properly before this Court. See Barbara, 99 F.3d at 56 (motion is not a responsive pleading); Britton v. Gleason Works, No. 07-Civ-6506(T), 2008 U.S. Dist. LEXIS 61876, at *6-7 (W.D.N.Y. Aug. 8, 2008)(same); Harrison v. Fed. Pac. Credit Co., No. 05-Civ-727S(F), 2006 U.S. Dist. LEXIS 9278, at *4 (W.D.N.Y. Feb. 3, 2006)(same). Accordingly, the Court may appropriately rely upon the allegations contained in Defendants' Amended Counterclaims when deciding Plaintiff's motion to dismiss. Britton, 2008 U.S. Dist. LEXIS 61876, at *6-7; Harrison, 2006 U.S. Dist. LEXIS 9278, at *4; Riordan v. Nationwide Mut. Ins. Fire Ins. Co., 756 F. Supp. 732 (S.D.N.Y. 1990). Thus, Defendants respectfully request that this Court accept the Amended Counterclaims in the context of deciding Plaintiff's motion to dismiss.

### II. DEFENDANTS HAVE PLED FRAUD WITH SUFFICIENT PARTICULARITY TO SATISFY RULE 9(B)

In its motion to dismiss, Plaintiff claims that Defendants did not sufficiently establish Mr. Perry's agency relationship with the Plan in order to bind the Plan to Mr. Perry's misrepresentations for purposes of Defendants' counterclaims, and that Defendants failed to

identify the time and place of the misrepresentations.[7]  Under Rule 9(b) of the Federal Rules of Civil Procedure, a party pleading fraud must satisfy the heightened pleading standard of "particularity."  FED. R. CIV. P. 9(b).  As articulated by Plaintiff in its motion to dismiss, the Second Circuit interprets this heightened pleading standard to include the identification of the time, place, speaker and content of the misrepresentations being alleged.  Gelles v. TDA Indus., Inc., No. 90-Civ-5133(MBM), 1991 U.S. Dist. LEXIS 3135, at *11 (S.D.N.Y. Mar. 19, 1991)(citing DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)).  Defendants' Amended Counterclaims satisfy these requirements: Defendants identified the speaker of the misrepresentations (Mr. Perry), the date of those misrepresentations (during contract negotiations in both December 2002 and December 2004), the place of the misrepresentations (the office shared by the Union and the Plan on West 31st Street) and the content of the misrepresentations (the existence of a comprehensive medical plan that would provide medical coverage for Defendants' bargaining unit employees and the Plan's compliance with various federal and state regulations).

To address the purported deficiencies raised by Plaintiff and to streamline this litigation, Defendants refer the Court to the Amended Counterclaims, which Defendants believe will moot Plaintiff's concerns with respect to Defendants' pleading to satisfy Rule 9(b) of the Federal Rules.[8]  (Ex. A, Am. CC).

---

[7] Plaintiff also takes issue with Defendants' use of the expression, "upon information and belief," in pleading their fraud claims.  However, it is well-settled that parties may plead fraud allegations "upon information and belief" when those allegations relate to the opposing parties' "state of mind, their intentions, and the state of . . . knowledge . . . [because] state of mind is a 'matter peculiarly within [the other parties'] knowledge.'"  Kaslof v. Global Health Alternatives, Inc., No. 98 Civ-7477(EHN), 2000 U.S. Dist. LEXIS 21053, at *50-51 (E.D.N.Y. Jun. 29, 2000)(quoting Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 379 (2d Cir. 1974)).  Accordingly, Defendants do not believe that the use of "upon information and belief" in these circumstances needs to be addressed further, as Defendants only use that expression concerning the Union's and/or the Plan's state of mind.

[8] In the event that the Court finds that Defendants' Amended Counterclaims are not specific enough to satisfy Rule 9, Defendants respectfully request that the Court give Defendants leave to amend the counterclaims, which Courts
(continued...)