UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
BOARD OF TRUSTEES OF THE DISTRICT   :
6 HEALTH PLAN,                         No. 07 Civ. 6391 (GBD)
                                    :
     Plaintiff,                       **AFFIDAVIT OF JOEL E. COHEN, ESQ.
                                    :  IN SUPPORT OF DEFENDANTS'
-against-                              OPPOSITION TO PLAINTIFF BOARD OF
                                    :  TRUSTEES OF THE DISTRICT 6
PINNACLE MANAGING CO., LLC,            HEALTH PLAN'S MOTION TO DISMISS
REALTY CORP., LLC, a/k/a 3647 REALTY :  AND MOTION TO STRIKE**
CO., LLC, a/k/a 3657 REALTY CO., LLC
AND WIENER REALTY, LLC,             :

     Defendants.                      :
------------------------------------ X

BOARD OF TRUSTEES OF THE DISTRICT   :
6 HEALTH PLAN, DISTRICT 6
INTERNATIONAL UNION OF INDUSTRIAL   :
SERVICE, TRANSPORT AND HEALTH
EMPLOYEES,                          :

     Plaintiffs-Third Party Defendant, :

-against-                           :

PINNACLE MANAGING CO., LLC,
REALTY CORP., LLC, a/k/a 3647 REALTY
CO., LLC, a/k/a 3657 REALTY CO., LLC
AND WIENER REALTY, LLC,

     Defendants-Third Party Plaintiffs.
------------------------------------ X

STATE OF NEW YORK   )
                    ) ss.
COUNTY OF NEW YORK  )

     JOEL E. COHEN, being duly sworn, deposes and says:

     1.    I am duly admitted to practice law in this Court and am a partner at the law firm of McDermott Will & Emery LLP, counsel for defendants Pinnacle Managing Co., LLC, Realty

Corp., LLC, a/k/a 3647 Realty Co., LLC, a/k/a 3657 Realty Co., LLC and Wiener Realty, LLC (collectively, "Defendants") in the above-captioned action.

2. I am fully familiar with the facts of this proceeding and make this affidavit in support of the accompanying Defendants' Memorandum of Law in Opposition to Plaintiff Board of Trustees of the District 6 Health Plan's Motion to Dismiss Defendants' Counterclaims and Motion to Strike certain affirmative defenses.

3. Attached hereto as Exhibit ("Ex.") A is a true and correct copy of Defendants' Amended Counterclaims submitted pursuant to Rule 15(a) of the Federal Rules of Civil Procedure.

4. Attached hereto as Ex. B is a true and correct copy of the Collective Bargaining Agreement between the District 6 International Union of Industrial Service, Transport and Health Employees (the "Union") and Defendants, executed on December 30, 2002, to cover Defendants' employees working at Defendants' property, 111 Worth Street in Manhattan, New York.

5. Attached hereto as Ex. C is a true and correct copy of the Collective Bargaining Agreement between the Union and Defendants, executed on January 8, 2005, to extend coverage for Defendants employees working at Defendants' properties located at 3647 Broadway and 3657 Broadway in Manhattan, New York.

6. Attached hereto as Ex. D is a true and correct copy of the District 6 Health Plan Contribution Collection and Payroll Audit Policy adopted May 1, 2006 by the Trustees of the District 6 Health Plan.

WHEREFORE, the undersigned respectfully requests that this Court deny Plaintiff's Motion to Dismiss and Motion to Strike Defendants' counterclaims and affirmative defenses.

Joel F. Cohen, Esq.

Duly sworn to before me this
22nd day of August 2008

Notary Public

NYK 1175250-1.054475.0022

JOANNE ALNAJJAR
Notary Public, State of New York
No. 02AL6164964
Qualified in New York County
Commission Expires May 7, 2011

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
BOARD OF TRUSTEES OF THE DISTRICT :
6 HEALTH PLAN,
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　Plaintiffs,　　　　　　　　　　　　　　　　　: No. 07 Civ. 6391 (GBD)
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
-against-　　　　　　　　　　　　　　　　　　　　　　　　**ANSWER TO FIRST AMENDED**
　　　　　　　　　　　　　　　　　　　　　　　　　　　: **COMPLAINT AND AMENDED**
PINNACLE MANAGING CO., LLC,　　　　　　　　　　　　**COUNTERCLAIMS**
REALTY CORP., LLC, a/k/a 3647 REALTY
CO., LLC, a/k/a 3657 REALTY CO., LLC　　　　　　　:
AND WIENER REALTY, LLC,
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BOARD OF TRUSTEES OF THE DISTRICT :
6 HEALTH PLAN, DISTRICT 6
INTERNATIONAL UNION OF INDUSTRIAL :
SERVICE, TRANSPORT AND HEALTH
EMPLOYEES,
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**AMENDED THIRD-PARTY**
　　　　Plaintiffs-Third Party Defendant,　　　　: **COMPLAINT**

-against-　　　　　　　　　　　　　　　　　　　　　　　:

PINNACLE MANAGING CO., LLC,
REALTY CORP., LLC, a/k/a 3647 REALTY
CO., LLC, a/k/a 3657 REALTY CO., LLC
AND WIENER REALTY, LLC,

　　　　Defendants-Third Party Plaintiffs.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

　　Defendants Pinnacle Managing Co., LLC, Realty Corp., LLC, a/k/a 3647 Realty Co., LLC, a/k/a 3657 Realty Co., LLC, and Wiener Realty, LLC (collectively, "Employers"), by their attorneys, McDermott Will & Emery LLP, hereby answer the First Amended Complaint ("Amended Complaint") of plaintiffs, as Trustees of the District 6 International Union of Industrial Service, Transport and Health Employees Health Plan (the "Plan"), bring

counterclaims against the Plan and third-party claims against District 6 International Union of Industrial Service, Transport and Health Employees (the "Union"):

## NATURE OF THE ACTION

1. Aver that the allegations contained in paragraph 1 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 1 contains factual allegations, Employers deny each and every allegation contained therein. Answering further, Employers respectfully refer the Court to the statutes referenced in paragraph 1 of the Amended Complaint for the true and correct content thereof.

## JURISDICTION AND VENUE

2. Admit the allegations contained in paragraph 2 of the Amended Complaint.

3. Admit the allegations contained in paragraph 3 of the Amended Complaint.

## STATUTORY SERVICE

4. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Amended Complaint.

## PARTIES

5. Aver that the allegations contained in paragraph 5 of the Amended Complaint state legal conclusions to which no response is required. Notwithstanding the foregoing, to the extent paragraph 5 contains factual allegations, Employers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained therein. Answering further, Employers respectfully refer the Court to the statutes referenced in paragraph 5 of the Amended Complaint for the true and correct content thereof.

6. Aver that the allegations contained paragraph 6 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent

paragraph 6 contains factual allegations, defendant Pinnacle Managing Co. admits that it is a New York Limited Liability Company with its principal place of business located at One Penn Plaza, Suite 4000, New York, New York 10119.

7. Aver that the allegations contained paragraph 7 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 7 contains factual allegations, defendant Realty Corp., LLC a/k/a 3647 Realty Co., LLC a/k/a 3657 Realty Co., LLC admits that it is a New York Limited Liability Company with its principal place of business located at One Penn Plaza, Suite 4000, New York, New York 10119.

8. Aver that the allegations contained paragraph 8 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 8 contains factual allegations, defendant Wiener Realty, LLC admits that it is a New York Limited Liability Company with its principal place of business located at One Penn Plaza, Suite 4000, New York, New York 10119.

## BACKGROUND

9. Aver that the allegations contained in paragraph 9 of the Amended Complaint state legal conclusions to which no response is required. Answering further, Employers respectfully refer the Court to the statutes referenced in paragraph 9 of the Amended Complaint for the true and correct content thereof.

10. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Amended Complaint, and aver that the contents of the Trust Agreement and Plan documents referenced therein speak for themselves.

11. Deny each and every allegation contained in paragraph 11 of the Amended Complaint, except admit that Employers were and are parties to collective bargaining agreements

("CBAs") with the Union, the contents of which CBAs speak for themselves. Answering further, Employers aver that they were not required to make contributions to the Plan on behalf of their bargaining unit employees at 111 Worth Street.

12. Aver that the allegations contained in paragraph 12 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 12 contains factual allegations, Employers deny that the Plan is an intended third-party beneficiary with respect to the CBAs covering Employers' bargaining unit employees at 111 Worth Street.

13. Deny each and every allegation contained in paragraph 13 of the Amended Complaint, except admit the existence of the Contribution Collection and Payroll Audit Policy (the "Policy"), which Policy was adopted May 1, 2006, and the content of which speaks for itself. Answering further, Employers aver that the Policy is not incorporated by reference into any of the applicable CBAs.

## FIRST CLAIM FOR RELIEF

14. Incorporate the responses made to paragraphs 1 through 13 of the Amended Complaint as if fully set forth herein.

15. Deny each and every allegation contained in paragraph 15 of the Amended Complaint, and aver that there is no CBA (to which Employers were party) governing 111 Worth Street prior to January 1, 2003, the approximate date Employers opened and began operating the building.

16. Deny each and every allegation contained in paragraph 16 of the Amended Complaint, and aver that there is no CBA (to which Employers were party) governing 111 Worth Street prior to January 1, 2003, the approximate date Employers opened and began operating the building.

17. Aver that the allegations contained in paragraph 17 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 17 contains factual allegations, Employers deny each and every allegation contained therein.

18. Aver that the allegations contained in paragraph 18 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 18 contains factual allegations, Employers deny each and every allegation contained therein. Answering further, Employers aver that there is no CBA (to which Employers were party) governing 111 Worth Street prior to January 1, 2003, the approximate date Employers opened and began operating the building.

## SECOND CLAIM FOR RELIEF

19. Incorporate the responses made to paragraphs 1 through 18 of the Amended Complaint as if fully set forth herein.

20. Aver that the allegation contained in paragraph 20 of the Amended Complaint states a legal conclusion to which no response is required. Answering further, Employers respectfully refer the Court to the statute referenced in paragraph 20 of the Amended Complaint for the true and correct content thereof.

21. Aver that the allegations contained in paragraph 21 of the Amended Complaint state a legal conclusion to which no response is required. Answering further, Employers respectfully refer the Court to the statutes referenced in paragraph 21 of the Amended Complaint for the true and correct content thereof.

22. Aver that the allegations contained in paragraph 22 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 22 contains factual allegations, Employers deny each and every allegation

contained therein, and aver that there is no CBA (to which Employers were party) governing 111 Worth Street prior to January 1, 2003, the approximate date Employers opened and began operating the building. Answering further, Employers respectfully refer the Court to the statute referenced in paragraph 22 of the Amended Complaint for the true and correct content thereof.

### THIRD CLAIM FOR RELIEF

23. Incorporate the responses made to paragraphs 1 through 22 of the Amended Complaint as if fully set forth herein.

24. Deny each and every allegation contained in paragraph 24 of the Amended Complaint, except admit that Defendant Realty Corp., LLC was and is a party to CBAs with the Union, the contents of which CBAs speak for themselves.

25. Deny each and every allegation contained in paragraph 25 of the Amended Complaint.

26. Aver that the allegations contained in paragraph 26 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 26 contains factual allegations, Employers deny each and every allegation contained therein.

27. Aver that the allegations contained in paragraph 27 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 27 contains factual allegations, Employers deny each and every allegation contained therein.

### FOURTH CLAIM FOR RELIEF

28. Incorporate the responses made to paragraphs 1 through 27 of the Amended Complaint as if fully set forth herein.

29. Aver that the allegations contained in paragraph 29 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 29 contains factual allegations, Employers deny each and every allegation contained therein. Answering further, Employers respectfully refer the Court to the statute referenced in paragraph 29 of the Amended Complaint for the true and correct content thereof.

### FIFTH CLAIM FOR RELIEF

30. Incorporate the responses made to paragraphs 1 through 29 of the Amended Complaint as if fully set forth herein.

31. Aver that the allegations contained in paragraph 31 of the Amended Complaint state a legal conclusion to which no response is required. Notwithstanding the foregoing, to the extent paragraph 31 contains factual allegations, Employers deny each and every allegation contained therein. Answering further, Employers respectfully refer the Court to the statute referenced in paragraph 31 of the Amended Complaint for the true and correct content thereof.

32. Deny each and every allegation contained in paragraph 32 of the Amended Complaint, and aver that there is no CBA (to which Employers were party) governing 111 Worth Street prior to January 1, 2003, the approximate date Employers opened and began operating the building.

33. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the Amended Complaint.

34. Deny each and every allegation contained in the numbered paragraphs (1) through (6) of the WHEREFORE clause of the Amended Complaint and further deny that the Plan is entitled to the requested relief or any relief whatsoever.

## FIRST AFFIRMATIVE DEFENSE

35.     The Plan's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

## SECOND AFFIRMATIVE DEFENSE

36.     The Plan is not a party and/or a third-party beneficiary and, therefore, may lack the capacity to sue.

## THIRD AFFIRMATIVE DEFENSE

37.     The Plan's audits wrongfully included non-bargaining unit employees in its calculation of unpaid contributions.

## FIRST AMENDED COUNTERCLAIM AND CLAIM

1.     District 6 International Union of Industrial, Service and Transit and Health Employees (the "Union") is a labor organization with its offices at 254 West 31st Street, New York, New York 10001, that acts as agent for the District 6 Health Plan (the "Plan") and in concert with the Plan.

2.     Upon information and belief, the Plan, by and through the President of the Union, William Perry ("Mr. Perry"), knowingly made false and misleading statements of material fact during contract negotiations to the effect that the Plan would provide comprehensive medical coverage for Employers' bargaining unit employees.

3.     Specifically, in or about December 2002, the Union, represented by Mr. Perry, who was also the sole Union trustee of the Plan, entered into negotiations with Joel S. Wiener ("Mr. Wiener"), Owner of Defendant Pinnacle Managing Co., LLC, for a collective bargaining agreement ("CBA") to cover the employees working in Pinnacle's property located at 111 Worth Street (hereinafter, "Worth Street").

4. As part of the month-long negotiations leading to the execution of the CBA for Worth Street (hereinafter, the "Worth CBA"), Mr. Perry represented to Mr. Wiener that Pinnacle could make contributions to the Plan to provide Defendants' employees who were working at Worth Street with comprehensive medical benefits.

5. The Worth CBA stated that Defendants would make contributions to *a* health plan for Defendants' employees (and could elect to change the plan after consultation with the Union), but it did not specify that the contributions had to specifically inure to the Plan.

6. Moreover, the Worth CBA did not incorporate by reference any trust agreements, audit provisions or audit policies.

7. Thus, Mr. Wiener executed the Worth CBA on December 30, 2002 in reliance on Mr. Perry's statements concerning the existence of the Plan to provide medical benefits for Defendants' employees and the Plan's compliance with these regulatory schemes.

8. Throughout the course of negotiating the Worth CBA in December 2002, Mr. Wiener always met with Mr. Perry at the shared office of the Union and the Plan, which, at that time, was located on West 31st Street between Seventh and Eighth Avenues in Manhattan.

9. Mr. Perry consistently represented to Mr. Wiener that the Union and the Plan were the same organization, and Mr. Perry never gave Mr. Wiener any cause to assume that these "entities" were anything other than one organization.

10. In fact, Mr. Perry represented that fact on behalf of the Union and the Plan since he was the Union's appointed trustee of the Plan.

11. In addition, both the Union and the Plan shared the same phone number and the same administrative employees -- Sandra Torres ("Ms. Torres") and another administrative assistant named "Clarabelle" -- such that when Mr. Wiener or Defendants' employees would call

either the Union or the Plan, either Ms. Torres or "Clarabelle" would answer the phone on behalf of both the Union and the Plan.

12. In or about December 2004, the Union, again represented by Mr. Perry, entered into negotiations with Mr. Wiener to extend coverage for the employees working in two of Pinnacle's other properties located at 3647 Broadway and 3657 Broadway (hereinafter, the "Broadway Buildings").

13. As part of the month-long negotiations leading to the execution of an extension for the CBA for the Broadway Buildings (hereinafter, the "Broadway CBA"), Mr. Perry again represented to Mr. Wiener that Pinnacle could make contributions to the Plan to provide Defendants' employees who were working at the Broadway Buildings with comprehensive medical benefits.

14. Relying on Mr. Perry's representations described above, Employers agreed to contribute to the Plan for purposes of providing comprehensive medical coverage for their employees. Thus, Mr. Wiener executed the extension of the Broadway CBA on January 8, 2005 in reliance on Mr. Perry's statements concerning the existence of the Plan and its intention to provide medical benefits to employees.

15. Unlike the Worth CBA, the Broadway CBA specifically referenced that Defendants would make contributions to the Plan for the purposes of providing Defendants' employees with health benefits.

16. However, the Broadway CBA still did not incorporate by reference any trust agreements, audit provisions or audit policies.

17. Again, during the December 2004 negotiations, Mr. Wiener was still under the premise that the Union and the Plan were the same entity because he would attend the

negotiations at the shared office of the Union and the Plan, the same administrative assistants were responsible for handling the affairs of both the Union and the Plan, and Mr. Perry always represented to Mr. Wiener that he was acting for both the Union and the Plan.

18. In fact, the shared office seemed to be run completely by Mr. Perry.

19. Notably, on at least five occasions following the execution of the Worth CBA and the Broadway CBA (*i.e.*, since approximately January 2005), Mr. Perry asked Mr. Wiener if the Union and the Plan could together lease and share a retail store space at Worth Street.

20. Although Mr. Wiener never rented the retail store space at Worth Street to Mr. Perry, the Union or the Plan, Mr. Wiener reasonably interpreted that Mr. Perry made such a request as an agent of one organization comprised of both the Union and the Plan.

21. In fact, during a meeting that took place in the Union and the Plan's shared office after the Broadway CBA had been executed (*i.e.*, after January 2005), Mr. Wiener expressed his concern to Mr. Perry that the Plan failed to pay the Defendants' employees medical benefits as promised by both CBAs.

22. In response to his concern, Mr. Perry told the clerical employees to "get the employees' medical cards straightened out," which reasonably implied to Mr. Wiener that Mr. Perry was acting as an agent on behalf of both the Union and the Plan.

23. In addition to Mr. Wiener's experiences with Mr. Perry's representations concerning the relationship between the Union and the Plan, Anthony Guillermo Mota ("Mr. Mota"), one of Defendants' building employees who had medical problems from 2005 to 2007, had similar experiences to Mr. Wiener in dealing with the Union and the Plan to further support the notion that Defendants and their employees reasonably believed the Union and the Plan were, in fact, the same organization.

24. For example, Mr. Mota would call the shared phone number for both the Union and the Plan numerous times between 2005 and 2007 regarding the Plan's failure to pay his health benefits.

25. Regardless of whether Mr. Mota was calling the "Union" or the "Plan" concerning his medical benefit issues, Ms. Torres would always answer the phone and tell Mr. Mota to send her his medical bills for reimbursement processing (but they were never reimbursed).

26. Thus, at all pertinent times, Defendants and their employees were led to believe that the Union and the Plan were in essence the same entity, and that Mr. Perry and the employees working in the shared office were acting as employees and/or agents for both.

27. Employers made contributions to the Plan for a period of time based on Mr. Perry's assurances that in return Employers' employees would have comprehensive medical coverage.

28. After making contributions to the Plan, Employers learned that their employees -- upon whose behalf Employers' were making contributions -- were systematically denied coverage and/or reimbursement for even routine medical claims.

29. Upon information and belief, the Plan and the Union perpetrated a fraudulent scheme whereby the Plan would willfully and knowingly refuse to process participants' claims and would deny coverage for pretextual reasons.

30. The fraudulent scheme perpetrated by the Plan and the Union was designed to lure Employers into making monetary contributions purportedly for medical coverage for Employers' bargaining unit employees when, in actuality, the Plan provided little to no medical coverage to such employees.

31. The Plan and the Union knew that their conduct constituted a fraud on Employers and would result in, and did result in, payments in the form of monetary contributions made on the behalf of Employers' bargaining unit employees for medical coverage that was not provided.

32. Employers reasonably and justifiably relied on the misrepresentations in agreeing and continuing to make contributions to the Plan.

33. Each of the Employers has been damaged by the wrongful conduct, which caused Employers to make contributions on behalf of their bargaining unit employees but for whom medical coverage was not provided.

34. Employers were forced to purchase supplemental HIP Health Plan of New York ("HIP") for their employees in an effort to provide medical coverage and to retain valuable employees.

35. The fraudulent conduct, as alleged herein, was done purposefully, maliciously, recklessly and without regard for the rights and interests of Employers.

36. As a direct and proximate result of the foregoing, Employers have been damaged in an amount presently unknown, but believed to be hundreds of thousands of dollars.

37. By reason of the foregoing, Employers are entitled to judgment against the Plan and the Union in an amount to be determined, together with the costs and disbursements of this action, including reasonable attorneys' fees.

### SECOND AMENDED COUNTERCLAIM AND CLAIM

38. Employers repeat the allegations set forth in paragraphs 1 through 37 above and incorporate them herein by reference.

39. Upon information and belief, the Plan, by and through Union President Mr. Perry, knowingly made false and misleading statements of material fact and omitted to state material facts during contract negotiations concerning the Plan's compliance with all Labor Relations

Management Act, Employee Retirement Income Security Act, Internal Revenue Service and Department of Labor regulations and statutory requirements.

40. Specifically, during contract negotiations in or about December 2002 concerning the Worth CBA, Mr. Perry represented to Mr. Wiener that the Plan was in compliance with various federal and state regulations, including those promulgated by the Labor Management Relations Act, ERISA, the Internal Revenue Service and the Department of Labor.

41. Mr. Wiener executed the Worth CBA on December 30, 2002 in reliance on Mr. Perry's statements concerning the Plan's compliance with these regulatory schemes.

42. During contract negotiations in or about December 2004 concerning the Broadway CBA, Mr. Perry represented to Mr. Wiener that the Plan was in compliance with various federal and state regulations, including those promulgated by the Labor Management Relations Act, ERISA, the Internal Revenue Service and the Department of Labor.

43. Again, Mr. Perry's misrepresentations to Mr. Wiener concerning the Plan's compliance with these regulatory schemes were made in the shared office between the Union and the Plan, located on West 31st Street in Manhattan, where shared clerical employees and a shared phone number were used to run both the Union and the Plan, as alleged in greater detail above.

44. Mr. Wiener executed the Broadway CBA on January 8, 2005 in reliance on Mr. Perry's statements concerning the Plan's compliance with these regulatory schemes.

45. Employers did rely on Mr. Perry's representations concerning the Plan's compliance with all regulations and statutory requirements.

46. Upon information and belief, Mr. Perry's representations were untrue and were known to be untrue when made.

47.     The fraudulent conduct, as alleged herein, was done purposefully, maliciously, recklessly and without regard for the rights and interests of Employers.

48.     As a direct and proximate result of the foregoing, Employers have been damaged in an amount presently unknown, but believed to be hundreds of thousands of dollars.

49.     By reason of the foregoing, Employers are entitled to judgment against the Plan and the Union in an amount to be determined, together with the costs and disbursements of this action, including reasonable attorneys' fees.

WHEREFORE, Employers respectfully request this Court to dismiss the Amended Complaint, and award Employers monetary damages for monies expended as a result of the fraudulent conduct, together with the costs and disbursements of this action, including reasonable attorneys' fees, and such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        August 22, 2008

                                                McDERMOTT WILL & EMERY LLP

                                                By: _____
                                                     Joel E. Cohen (JC 5312)
                                                     340 Madison Avenue
                                                     New York, New York 10173
                                                     (212) 547-5400
                                                     *Attorneys for Defendants*

NYK 1175153-1.054475.0022