# EXHIBIT B

Jose C.

# AGREEMENT

# BETWEEN

# PINNACLE MANAGING CO., LLC

# AND

# DISTRICT 6 INTERNATIONAL UNION OF INDUSTRIAL SERVICE, TRANSPORT, AND HEALTH EMPLOYEES

January 1, 2003 – December 31, 2008

## AGREEMENT

THIS AGREEMENT made and entered into this 1st day of January 2003, by and between District 6, International Union of Industrial Service, Transport, and Health Employees (hereinafter referred to as "Union") and Pinnacle Managing Co., CLC (hereinafter referred to as the "Employer").

## WITNESSETH

WHEREAS the parties have entered into Collective Bargaining Negotiations which negotiations have resulted in complete agreement between the parties.

NOW, THEREFORE, it is agreed by and between the Union and the Employer as follows:

## ARTICLE I – UNION RECOGNITION

1. The Employer recognizes the Union as the sole Collective Bargaining Agent for all its full-time doormen, supers, handyman, and porters employed by the Employer at 111 Worth Street, New York, New York, and any other company owned and operated by this company within twenty-five (25) miles radius, excluding Guards, Clerical Employees, and Supervisors.

2. The term "Employee" or "Employees", as used in this agreement, shall be construed to include only the classifications of employees specifically listed in this agreement.

## ARTICLE II – DUES AND CHECK-OFF

1. The Employer agrees during the term of this Agreement to a voluntary check-off of the weekly dues and Union initiation fees, generally applicable to all members of the Union in accordance with Section 8(a)(3) of the National Labor Relations Act.

2. Upon receipt of a written authorization from an Employee in the form annexed hereto as Exhibit A, the Employer shall, pursuant to such authorization, deduct from the wages due said Employee each week, starting not earlier than the first pay period following the completion of the Employee's first thirty (30) days of employment, and remit to the Union regular weekly dues and initiation fee as fixed by the Union. Each month, the Employer shall remit to the Union all deductions for dues and initiation fees made from the wages of the Employees for the preceding month, together with a list of all these Employees and their deductions. Such lists shall include, for each Employee, the Employee's name,

1

job classification, social security number, hours of work, regular pay, and overtime pay.

3. At the written request of the Union made in accordance with the provisions of this paragraph 3, the Employer shall deduct from the wages dues an affected Employee the amount stated by the Union as unpaid dues and/or initiation fees as follows:

    (a) The Employer shall deduct such unpaid dues and/or initiation fees weekly. Deductions shall be made only from the wages of Employees for whom the Employer has a current check-off authorization.

    (b) The Employer will not be responsible for or required to attempt to recover unpaid dues or initiation fees for Employees who have terminated.

4. Employees who do not sign written authorizations for deductions must adhere to the same payment procedure by making payments directly to the Union.

5. Upon receipt of a written authorization from an Employee in the form annexed hereto as Exhibit B, the Employer shall, pursuant to such authorization, deduct from the wages due said Employee each pay period, starting not earlier than the first period following the completion of the Employee's first thirty (30) days of employment, the sum specified in said authorization and remit same to the I.U.T.S.T.H.E Federal Credit Union to the credit or account of said Employee. It is understood that such check-off and remittance shall be made by the Employer wherever feasible. The Employer shall use its best efforts to submit Credit Union deductions to the Credit Union within two (2) weeks of said deductions.

6. The Employer shall be relieved from making such "check-off" deductions upon (a) termination of employment, or (b) transfer to a job other than one covered by the bargaining unit, or (c) layoff from work, or (d) an agreed leave of absence, or (e) revocation of the check-off authorization in accordance with its terms or with applicable law. Notwithstanding the foregoing, upon the return of an Employee to work from any of the foregoing enumerated absences, the Employer will immediately resume the obligation of making said deductions, except that deductions for terminated Employees shall be governed by Paragraph 1 hereof. This provision, however, shall not relieve any Employees of the obligation to make the required dues and initiation payment pursuant to the Union constitution in order to remain in good standing.

7. The Employer shall not be obliged to make dues deductions of any kind from any Employee who, during any dues week involved, shall have failed to receive sufficient wages to equal the dues deductions.

8. The Employer agrees to furnish the Union each month with the names of newly hired Employees, their addresses, social security numbers, classifications of work,

2

---

8. The Employer agrees to furnish the Union each month with the names of newly hired Employees, their addresses, social security numbers, classifications of work,

2

their dates of hire, and names of terminated Employees, together with their dates of terminations, and names of Employees on leave of absence.

9. It is specifically agreed that the employer assumes no obligation, financial or otherwise, arising out of compliance with the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the Employer harmless from any claims, actions or proceedings by any Employee arising from deductions made by the Employer hereunder. Once funds are remitted to the Union, their disposition thereafter shall be the sole and exclusive obligation and responsibility of the Union.

10. Each month, the Employer shall remit to the Union all deductions for dues and initiation fees made from the wages of Employees for the preceding month, together with a list of all Employees from whom dues and/or initiation fees have been deducted.

## ARTICLE III – PROBATIONARY EMPLOYEES

1. New employees covered by this Agreement shall be considered probationary for a period of ninety (90) calendar days from their last date of hire.

2. During any of the probationary periods outlined in Section 1 of this Article, an employee shall not accrue any seniority whatsoever and the Employer may discharge any such employee at will for a reason, with or without cause, and such discharge shall not be subject to the grievance and arbitration provisions of this Agreement.

3. Upon successful completion of the probationary periods outlined in Section 1 of this Article, the employee's seniority shall be retroactive to the last date of hire.

## ARTICLE VI – MANAGEMENT RIGHTS

1. The Employer retains the exclusive right to manage its business to direct, control and schedule its operations and work force, and to make any and all decisions affecting the business, whether or not heretofore exercised. Such prerogatives shall include but not be limited to the sole and exclusive right to hire, promote, layoff, assign, suspend, discharge and discipline employees; select and determine the numbers of its employees; to direct and schedule the work force; to purchase services of materials from an supplier whatsoever; determine and schedule when overtime shall be worked; determine the work duties of employees; promulgate, post and enforce rules and regulations governing the conduct and acts of employees during working hours; select supervisory employees; determine qualifications of employee; train employees; determine reasonable work performance levels and standards of performance of employees; and in all respect, carry out, in addition, the ordinary and customary functions of management except as specifically altered or modified b the express terms of this Agreement.

3

2.    Failure to exercise any of the functions, whether or not expressly stated herein, shall not constitute a waiver thereof.

3.    The provisions of this Agreement do not prohibit the Employer from directing any person not covered by this Agreement from performing any task. The Employer has the right to schedule its management and supervisory personnel at any time. The selection of supervisory personnel shall be the sole responsibility of the Employer and shall not be subject to the grievance and arbitration provisions of this Agreement.

## ARTICLE V – EQUAL OPPORTUNITY

1.    In accordance with the established policy of the company and the Union, the provisions of the Agreement will apply equally to all employees hereunder regardless of sex, race, color, creed, age, or national origin. The Employer and the Union also recognizes the desirability to all persons and agree to work actively toward implementation of that policy.

2.    There will be no discrimination against any employee on account of membership in, or activity in behalf of the Union.

## ARTICLE VI – SHOP STEWARDS

1.    The Union may designate one (1) shop steward from among the bargaining unit employees. With the exception of investigation timely filed grievances, the shop steward shall not transact any business during work time. However, such investigation shall not interfere with the steward's regular work duties or the work of others.

2.    The Employer need not recognize any steward until notified in writing by the Union.

3.    Stewards must notify their immediate supervisor for permission to leave their jobs before commencing an investigation of grievance matters on company time.

## ARTICLE – VII – VISITATION & BULLETIN BOARD

1.    The employer shall permit any authorized Representative(s) of the Union to have free access to pervade the facility, at reasonable hours without interference with operations, as mentioned in this agreement. If it becomes necessary for a Union Representative(s) to meet privately with the shop steward during working hours, such meeting shall be granted. Someone from Management shall be notified when a Union Representative(s) is in the facility.

4

2.  The Employer shall make available to the Union and the employees a bulletin board for the purpose of posting Union notices.

## ARTICLE VIII-SENIORITY

1.  An employee shall have seniority in the classification to which the employee at the time is permanently assigned and such seniority shall be measured by the length of service an employee has with the Employer since the date of hire. Job qualification may determine the assignment.

2.  When a permanent vacancy occurs in a classification and the Employer, in its discretion, decides to fill the vacancy permanently by promoting an employee to it from a classification with lower minimum job rate, rather than hiring from the outside or by transferring an employee in an equal-rated classification, the Employer shall select the employee for the vacancy based on the ability, fitness and other qualifications or qualified employees in lower-rated classification and when these are approximately equal in two or more employees, the Employer shall select the employee with the most seniority. The Employer's decision as to the ability, fitness, and other qualifications of qualified employees shall be final and binding except that it may be challenged only on the basis that it is arbitrary and capricious, and such challenges may be raised under the grievance procedure.

3.  An employee so promoted shall retain his/her rate of pay for a trial period of not more than thirty (30) calendar days. If the employee is then permanently assigned, the employee shall receive the minimum job rate for the time of the promotion fails the trail period, than the employee shall be returned to his/her former classification prior to promotion.

## ARTICLE IX – LAYOFFS & RECALLS

1.  In the event of layoff, the least senior employee shall be laid off first. When it becomes necessary to layoff employees, the employees and the Union shall be notified.

2.  When the Employer wishes to recall, employees shall be recalled in the reverse order of their layoff. Notification of recall shall be given by certified mail or mailgram, and the Union shall be advised of such opening and notifications. The employee shall be required to respond within seventy-two (72) hours upon receipt of such notice. The Employer's obligation to send such notice, shall be limited to openings which occur within six (6) months of the date of the layoff. After six (6) months, the said employee shall be removed from the seniority list.

3.  Any employee rehired after layoff during the term of this Agreement, shall receive any wage increase which became effective during the period of such layoff in which such employee would have received but for the layoff.

5

3.  Any employee rehired after payoff during the term of this Agreement, shall receive any wage increase which became effective during the period of such layoff in which such employee would have received but for the layoff.

5

4.   It is specifically understood that during slack periods or dull seasons, if any, prior to any layoffs or division of work, the matter shall first be discussed between the Union and the Employer.

## ARTICLE X – DISCIPLINE & DISCHARGE

1.   The Employer shall have the right to discipline and discharge an employee for just cause. In the event of discharge, the Employer shall notify the Union within twenty-four (24) hours after such discharge of the reason therefore. In the event the Union contests the propriety of the discharge, the matter shall be handled in accordance with the grievance and arbitration procedures hereinafter set forth.

2.   The period of trying a new employee shall be ninety (90) days, which during that time, the employee may be discharged without recourse to the grievance and arbitration provisions of this Agreement. Thereafter, the employee shall not be discharged except for just cause, which shall include, but not limited to; incompetence, dishonesty, intoxication, falsifying records or time cards, excessive lateness and absenteeism, fighting, stealing, gambling, willful destruction of Employer's property, use or possession of drugs on Employer's property, Physical or verbal client abuse or failure to report an accident.

3.   All employees should have Union Representation, whether a shop steward and/or Business Agent, prior to any disciplinary meeting.

4.   In the event that an employee is being disciplined or discharged for any reason, the Employer shall submit in writing to both the Union and the employee the reason for such action, no later than twenty-four (24) hours after the incident.

## ARTICLE XI – GRIEVANCE PROCEDURE

1.   Any and all disputes, differences and grievances (hereinafter referred to as grievances) between the Union and the Employer shall be taken up as follows:

   a.   Any employee or group of employees feeling aggrieved may present through Union Shop Steward such grievance, for adjustment with the immediate supervisor involved within seventy-two (72) hours after the incident. In the event that the grievance is not adjusted within two (2) working days, it shall be reduced to writing and referred to;
   b.   The Union Representative and the Employer. If no satisfactory settlement is arrived within five (5) working days, then the dispute, difference or grievance shall be submitted to arbitration as set forth in Article XII.
   c.   Any employee shall have the right to have a Union Representative(s) present at all grievance meeting with the Employer.
   d.   Answers to all grievance shall be in writing and submitted to the Union within the time limits herein above set forth.

6

present at all grievance meeting with the Employer.
   d.   Answers to all grievance shall be in writing and submitted to the Union within the time limits herein above set forth.

6

## ARTICLE XII – ARBITRATION PROCEDURE

In the event that the parties cannot resolve a grievance through the procedures set forth above in Article XI and choose to submit the grievance to arbitration, they shall request that the American Arbitration Association submit a panel of arbitrators in accordance with its regular procedures unless in the interim the parties have mutually agreed upon an arbitrator. The arbitrator shall have no authority to add to, subtract from or modify any provisions of the Agreement; his authority being limited to the interpretation of this Agreement. Within twenty (20) calendar days of the closing of the proceeding, and the issuance of the arbitrator's decision, such decision shall be final and binding on both parties. In on case shall the hearing by the arbitrator be delayed by either the Company and/or the Union, for a period of more than sixty (60) calendar days after the Board is notified of the intent of the parties to arbitrate unless mutually agreed to by both parties.

## ARTICLE XIII – WAGES

Effective January 1, 2004, through January 1, 2008, all employees shall receive a yearly increase in salary of $15.00 per week.

The Employer may at any time grant an employee merit increases, bonuses or any additional increases other than is provided for in the contract if it so desires.

## ARTICLE XIV – HOURS & OVERTIME

1. The standard work week for regular full-time doorman shall be forty (40) hours consisting of five (5) days of eight (8) hours each. The specific starting and termination time shall be set by the Employer.

2. The present work schedule shall be maintained as far as possible. However, work schedules may be changed by the Employer where business conditions warrant such change; provided, however, that indiscriminate changes shall not be made in schedules; and provided further, changes deemed economically necessary by the Employer shall be made only notice to the Union.

3. All work performed by doorman in excess of forty (40) hours shall be paid for at the rate of time and one-half (1.5) the employee's regular rate.

4. Overtime shall be offered to employees based on seniority and functional need, within the shift on which they work.

5. Porters are required to keep the building clean. They are therefore not subject to regularly scheduled work days or work weeks. Satisfactory completion of their tasks requires porters to work irregular hours, some weeks in excess of 40 hours,

7

some weeks less than 40 hours. Porters receive an apartment to compensate them for any hours worked over 40 or they receive pa over and above the minimum set forth in this Agreement.

## ARTICLE XV – HOLIDAYS

1.  Non-probationary employees employed on or after the effective date of this Agreement, shall receive the following holidays with pay at the employee's regular straight time hourly rate if the holiday falls on the employee's day off:

    New Years Day                     Independence Day
    Presidents Day                    Labor Day
    Memorial Day                      Thanksgiving Day

    An employee who works on any of the aforesaid holidays shall receive pay at the rate of time and a half instead of holiday pay.

2.  If a contractual holiday falls during a non-probationary regular full-time employee's vacation, the Employer, at its discretion, may either provide the employee with an extra day's pa at his/her regular straight-time hourly rate or grant the employee another day off to be scheduled within thirty (30) days after the holiday.

3.  To be qualified for holiday pay, an employee must work two (2) regularly scheduled workdays immediately preceding and two (2) regularly schedule wokdays immediately following such holiday.

4.  Holidays pay shall not be granted to employees who are on any of the contractual leaves of absence provided herein, layoff, or otherwise not actively employed by the Employer at the time the holiday falls.

5.  An employee who scheduled to work on any of the contractual holidays set forth herein and does not work on that day, shall forfeit holiday pay unless such absence is caused by a bona fide illness as substantiated by a doctor's certificate, if requested, or is otherwise excused b the Employer. Holiday pay shall be forfeited if such proof is requested and not furnished.

6.  Employees shall work holiday work in seniority rotation, with the right of refusal going to the most seniority employee.

8

## ARTICLE XVI – VACATIONS

1.    All non-probationary employees shall receive annual vacation at base pay as follows:

    a.    After one (1) year.........................five (5) days.
    b.    After three (3) years.....................seven (7) days.
    c.    After five (5) years.......................ten (10) days.

2.    All employees taking a vacation during which a granted holiday occurs, shall be given an additional day of pay in lieu thereof.

3.    Vacations are earned, and in the event that an employee quits with two weeks notice or is terminated or laid off prior to the vacation period for that year, the employee shall receive his/her full pro-rated vacation pay due at the time he/she either leaves his/her position, or is terminated or laid off.

4.    Employees covered by this Agreement shall receive vacation benefits on a prorated basis, consistent with the standard number of hours regularly scheduled to work each week.

5.    Choice of vacation shall be granted on the basis of seniority and must be submitted in writing at least thirty (30) days prior to the first day that the requested vacation is set to begin. In addition, an employee may elect to combine available sick leave with vacation hours, as long as timely written as discussed above is submitted to the Employer for approval.

## ARTICLE XVII – SICK PAY & BEREAVEMENT LEAVE

1.    All employees shall be entitled to two (2) paid sick leave, after one year of employment, accruable on the basis of one (1) day of paid sick leave, per each six month worked.

2.    All employees shall be entitled to three (3) paid sick leave, after two years of employment, accruable on the basis of one (1) day of paid sick leave, per each one hundred twenty (120) days worked.

3.    Bereavement leave shall be granted in the case of members in the immediate family (wife, husband, parents, grandparents, children, sisters, brothers, parents-in-law, grandchild, domestic partner (all), (foster or adopted) of a regular employee, and will be granted for three (3) days with pay, including the day of the funeral, if death is incurred within the immediate family.

9

## ARTICLE XVIII – JURY DUTY

1.    If a covered employee is required to serve as a juror, the Employer will pay the employee his/her regular earnings on the basis of a seven (7) hour day and a thirty-five (35) hour week for a maximum of five (5) days. The Employer has the option of requiring proof of such service b an employee, and notice must be given tot he Employer from the County Clerk's Office, as to the number of days the employee served on jury duty.

2.    During the term of this Agreement, the Union and employees covered by this Agreement will continue to perform their duties in the event that any other employees, labor organizations or other persons engage in any strike, picketing, walkout, boycotting, whether of a primary or secondary nature.

## ARTICLE XIX – SEXUAL HARASSMENT

1.    The Employer is committed to the principle that no employee shall be subject to sexual harassment, which includes unwanted verbal or physical sexual attention.

## ARTICLE XX – INDIVIDUAL AGREEMENTS PROHIBITED

1.    The Employer shall not enter into any agreements with individual employees, and in the event such an agreement is entered into the same, shall be deemed null and void.

## ARTICLE XXI – HEALTH FUND

1.    (a) Effective January 1, 2003, the Employer hereby agrees to make contributions of Two Hundred Thirty Five Dollars ($235.00) per month, for each single employee in the bargaining unit.

(b) Each year, three (3) months prior to the anniversary date of the new Health Providers Plan, the Employer and the Union shall meet to review any cost increase to determine a need for any increase or change in the Health Provider.

## ARTICLE XXII – SUCCESSORS AND ASSIGNS

This agreement shall be binding upon the parties hereto and upon their successors and assigns.

10

## ARTICLE XXIII – DURATION OF AGREEMENT

This agreement shall become effective from and remain operative and binding upon the parties hereto for a period of three (3) years from January 1, 2003 and shall continue in full force and effect until the close of business day on December 31, 2008

IN WITNESS, WHEREOF, the parties hereto have set their hands and seal this _____ day of December 2002.

DISTRICT 6 INTERNATIONAL
UNION OF INDUSTRIAL SERVICE,
TRANSPORT, AND HEALTH
EMPLOYEES

_____
12/30/02

PINNACLE MANAGING Co., LLC

_____
JOEL S. WIENER, PRESIDENT
12/30/02

11