# EXHIBIT C

# AGREEMENT
## PREAMBLE



*[handwritten: 3647 and 3657 Realty Co LLC]*

THIS AGREEMENT made and entered into this 8th day of January, 2005 between Realty Corp, LLC, and any other Company operated by this Company within fifty (50) miles radius of NYC (hereinafter referred to as "Employer" or "Company") and District 6, International Union of Industrial, Service, Transport and Health Employees (hereinafter referred to as "Union") with its offices at 254 West 31st Street, New York, New York 10001.

## WITNESSETH

**WHEREAS**, the parties have entered into Collective Bargaining Negotiations which negotiations have resulted in complete agreement between the parties.

**NOW, THEREFORE**, it is agreed by and between the Union and the Employer as follows:

## ARTICLE I
## RECOGNITION - THE COLLECTIVE BARGAINING UNIT

1. The Employer recognizes the Union as the sole and exclusive bargaining representative for all regular full-time and regular part-time doormen, elevator operator, and porters, as hereinafter defined, who are working at its 3647 Broadway and 3657 Broadway, in NYC facilities. Also, any other Company owned and operated by this Company within fifty (50) miles radius, excluding all office clerical employees, guards, and supervisors as defined by the Act.

2. The term "Employee" or "Employees", as used in this Agreement shall be construed to include only the classification of employees specifically listed in this Agreement.

## ARTICLE II
## PROBATIONARY EMPLOYEES

1. New employees covered by this Agreement shall be considered probationary for a period of sixty (60) calendar days from their last date of hire.

2. During any of the probationary periods outlined in Section 1 of this Article, an employee shall not accrue any seniority whatsoever and the Employer may discharge any such employee at will for any reason, with or without cause. Such discharge shall not be subject to the grievance and arbitration provisions of this Agreement.

3. Upon successful completion of the probationary periods outlined in Section1 of this Article, the employee's seniority shall be retroactive to the last date of hire.

1

## ARTICLE III
## UNION SECURITY AND CHECK-OFF

1. The Employer agrees during the term of this Agreement to a voluntary check-off of the weekly dues and Union initiation fees, generally applicable to all members of the Union in accordance with Section 8(a)(3) of the National Labor Relations Act.

2. Upon receipt of a written authorization from an Employee in the form annexed hereto as Exhibit A, the Employer shall, pursuant to such authorization, deduct from the wages due said Employee each week, starting not earlier than the first pay period following the completion of the Employee's first thirty (30) days of employment, and remit to the Union regular weekly dues and initiation fee as fixed by the Union. Each month, the Employer shall remit to the Union all deductions for dues and initiation fees made from the wages of the Employees for the preceding month, together with a list of all these Employees and their deductions. Such lists shall include, for each Employee, the Employee's name, job classification, social security number, hours of work, regular pay, and overtime pay.

3. At the written request of the Union made in accordance with the provisions of this paragraph 3, the Employer shall deduct from the wages dues of an affected Employee the amount stated by the Union as unpaid dues and/or initiation fees as follows:

    (a) The Employer shall deduct such unpaid dues and/or initiation fees weekly. Deductions shall be made only from the wages of Employees for whom the Employer has a current check-off authorization.

    (b) The Employer will not be responsible for or required to attempt to recover unpaid dues or initiation fees for Employees who have terminated.

4. Employees who do not sign written authorizations for deductions must adhere to the same payment procedure by making payments directly to the Union.

5. Upon receipt of a written authorization from an Employee in the form annexed hereto as Exhibit B, the Employer shall, pursuant to such authorization, deduct from the wages due said Employee each pay period, starting not earlier than the first period following the completion of the Employee's first thirty (30) days of employment, the sum specified in said authorization and remit same to the I.U.I.S.T.H.E Federal Credit Union to the credit or account of said Employee. It is understood that such check-off and remittance shall be made by the Employer wherever feasible. The Employer shall use its best efforts to submit Credit Union deductions to the Credit Union within two (2) weeks of said deductions.

6. The Employer shall be relieved from making such "check-off" deductions upon (a) termination of employment, or (b) transfer to a job other than one covered by the bargaining unit, or (c) layoff from work, or (d) an agreed leave of absence, or (e) revocation of the check-off authorization in accordance with its terms or with applicable law. Notwithstanding the foregoing, upon the return of an Employee to work from any of the foregoing enumerated absences, the Employer will immediately resume the obligation of making said deductions, except that deductions for terminated Employees shall be governed by Paragraph 1 hereof. This provision, however, shall not relieve any Employees of the obligation to make the required dues and initiation payment pursuant to the Union constitution in order to remain in good standing.

7. The Employer shall not be obliged to make dues deductions of any kind from any Employee who, during any dues week involved, shall have failed to receive sufficient wages to equal the dues deductions.

8. The Employer agrees to furnish the Union each month with the names of newly hired Employees, their addresses, social security numbers, classifications of work, their dates of hire, and names of terminated Employees, together with their dates of terminations, and names of Employees on leave of absence.

9. It is specifically agreed that the employer assumes no obligation, financial or otherwise, arising out of compliance with the provisions of this Article, and the Union hereby agrees that it will indemnify and hold the Employer harmless from any claims, actions or proceedings by any Employee arising from deductions made by the Employer hereunder. Once funds are remitted to the Union, their disposition thereafter shall be the sole and exclusive obligation and responsibility of the Union.

10. Each month, the Employer shall remit to the Union all deductions for dues and initiation fees made from the wages of Employees for the preceding month, together with a list of all Employees from whom dues and/or initiation fees have been deducted.

## ARTICLE IV
## SENIORITY

1. Seniority shall be based on the length of an employee's continuous service in the bargaining unit as specified in this Agreement. Seniority rights shall be determined by job classification.

2. Seniority shall be the period of continuous employment with the Company. All new employees shall be considered as on probation, without seniority for the first sixty (60) calendar days of continuous employment. If after the expiration of sixty (60) calendar days, probationary period, the employee is retained, his/her seniority shall date from the day of continuous employment with the Company.

3. An employee shall lose his seniority for any of the following reasons:
   a. by discharge for just cause;
   b. by voluntarily quitting;
   c. by failure to report to work within five (5) working days, and not notifying the Employer within three (3) working days after being recalled from lay off by a notice sent to his/her last known address, by certified mail;
   d. by failure to perform any work within the past six (6) months.

4. When a permanent vacancy occurs in a classification and the Employer, in its discretion, decides to fill the vacancy permanently by promoting an employee to it from a classification with lower minimum job rate. Rather than hiring from the outside or by transferring an employee in an equal-rated classification, the Employer shall select the employee for the vacancy based on the ability, fitness and other qualifications or qualified employees in lower-rated classification. When these are approximately equal in two or more employees, the Employer shall select the employee with the most seniority. The Employer's decision as to the ability, fitness, and other qualifications of qualified employees shall be final and binding except that it may be challenged only on the basis that it is arbitrary and capricious and such challenges may be raised under the grievance procedure.

5. An employee so promoted shall retain his/her rate of pay for a trial period of not more than thirty (30) calendar days. If the employee is then permanently assigned, the employee shall receive the minimum job rate for the time of the promotion or retain his/her rate of pay, whichever is greater. If an employee selected for a promotion fails the trial period, then the employee shall be returned to his/her former classification prior to promotion.

## ARTICLE VI
## UNION VISITATION & BULLETIN BOARDS

1. The Employer shall permit any authorized Union Representative(s), to have free access to the facility at reasonable hours, without interference with operations, as mentioned in this Agreement. If it becomes necessary for a Union Representative(s) to meet privately with the Shop Steward during working hours, such meeting shall be granted, so long as facility operations are not disrupted. Someone from Management shall be notified when a Union Representative is in the facility.

2. The Employer shall make available to the Union and the employee a bulletin board for the purpose of posting Union notices. The Union Representative or Shop Steward shall show all notices to the Employer. Such notice(s) shall not contain any matters of controversial nature.

## ARTICLE VI
## SHOP STEWARD

1. The Union shall designate one (1) Shop Steward from among the bargaining unit employees. With the exception of investigating timely filed grievances, the Shop Steward shall not transact any business during work time. However, such investigation shall not interfere with the Steward's regular work duties or the work of others.

2. The Employer need not recognize any Steward, until notified in writing by the Union.

3. Stewards must notify their immediate supervisor for permission to leave their jobs before commencing any investigation of grievance matters on company time. Such permission shall be unreasonably withheld.

## ARTICLE VII
## EQUAL EMPLOYMENT OPPORTUNITY

1. No employee shall be unlawfully discriminated against in any manner pertaining to hiring, wages, hours, race, color, creed, national origin, sex, religion, or otherwise qualified handicap. Nor for his/her seeking redress through the grievance procedure for alleged grievances or legitimate Union activities under the National Labor Relations Act. The Company and the Union further agree not to discriminate against any employee because of age where such discrimination is in violation of applicable federal statutes.

2. In order to provide equal employment and advancement opportunities to all individuals, employment decisions concerning bargaining unit employees will be based on seniority, merit, qualifications, and abilities.

3. This policy governs all aspects of employment, including selection, job assignment, compensation, discipline, termination, and access to benefits and training.

## ARTICLE VIII
## MANAGEMENT RIGHTS

1. The Company retains the exclusive right to manage the business, to direct, control and schedule its operations and work force and to make any and all decisions affecting the business, whether or not heretofore exercised. Such prerogatives shall include but not be limited to the sole and exclusive right to hire, promote, layoff, assign, suspend, discharge, and discipline employees; select and determine the numbers of its employees; to direct and schedule the workforce; to purchase services of materials from any supplier whatsoever; determine and schedule when overtime shall be worked; determine the work duties of employees; promulgate,

post and enforce rules and regulations governing the conduct and acts of employees during working hours; select supervisory employees; determine qualifications of employees; train employees; determine reasonable work performance levels and standards of performance of employees; and in all respect, carry out, in addition, the ordinary and customary functions of management except as specifically altered or modified by the express terms of this Agreement.

2. Failure to exercise any of the functions, whether or not expressly stated herein, shall not constitute a waiver thereof.

3. The provisions of this Agreement do not prohibit the Employer from directing any person not covered by this Agreement from performing any task. The Employer has the right to schedule its management and supervisory personnel at any time. The selection of supervisory personnel shall be the sole responsibility of the Employer and shall not be subject to the grievance and arbitration provisions of this Agreement.

## ARTICLE IX
## LAY-OFFS & RECALLS

1. In the event of a lay-off, the least senior employee shall be laid off first. When it becomes necessary to lay off employee(s), the employee(s) and the Union shall be notified within seventy-two (72) hours before the lay off takes effect.

2. In reducing personnel because of lack or work and when such lay offs are for period of more than three (3) working days, the Employer will first lay off all probationary employees in the particular job classification affected, and then the least senior employee in a particular classification.

3. When the Employer wishes to recall, employees shall be recalled in the reverse order of their lay off. Notification of recall shall be given by certified mail, and the Union shall be advised of such openings and notifications. The employee shall be required to respond within three (3) working days upon receipt of such notice. The Employer's obligation to send such notices shall be limited to the openings which occur within six (6) months of the date of the lay off. After six (6) months, the said employee(s) shall be removed from the seniority list.

4. Any employee rehired after lay off during the term of this Agreement shall receive any wage increase(s), which became effective during the period of such lay off, in which such employee would have received, but for the lay off.

5. Employees of equal seniority and same job classification, who are laid off, shall be laid off in reverse alphabetical order of their last name as recorded on their first day of work. Employees laid off shall be recalled in reverse order of their lay off.

# ARTICLE X
# HOURS OF WORK & OVERTIME

1. The standard workweek for all full-time doormen and elevator operators shall be forty (40) hours, consisting of five (5) days of eight (8) hours each. The Employer shall set the specific starting and termination time.

2. All hours worked by doormen or elevator operator in excess of forty (40) hours in any work week shall be paid at the rate of one and one-half (1 ½ ) times their regular rate of time.

3. The present work schedule shall be maintained as far as possible. However, work schedules may be changed by the Employer where business conditions warrant such change; provided, however that indiscriminate changes shall not be made in schedules; and provided, changes deemed economically necessary by the Employer shall be made only upon notice to the Union.

4. Overtime shall be distributed as equally as practicable among employees, based on their seniority, and functional needs, within the shift on which they work.

5. Overtime work offered but refused by an employee shall be counted as overtime worked, without pay, for the purpose of determining the equitable distribution of overtime.

6. Porters shall be required to keep the building clean. They are therefore not subject to regularly scheduled workdays or workweeks. Satisfactory completion of their tasks requires porters to work irregular hours, some weeks in excess of 40 hours, and some weeks less than 40 hours. Porters receive an apartment to compensate them for any worked over 40 or they receive pay over and above the minimum set forth in this Agreement.

7. The junior qualified employee will be assigned and must accept the overtime work if all other qualified senior employees are unable to accept the assignment.

# ARTICLE XI
# DISCHARGE, DISCIPLINE OR SUSPENSION

1. The Employer shall have the right to discipline and discharge an employee for just cause. In the event of discharge, the Employer shall notify the Union within twenty-four (24) hours after such discharge of the reason thereof. In the event the Union contests the propriety of the discharge, the matter shall be handled in accordance with the grievance and arbitration provisions hereinafter set forth.

2. The period for trying a new employee shall be thirty (30) calendar days, which during that time; the employees may be discharged without recourse to the grievance and arbitration provisions of this Agreement. Thereafter, the employees shall not be discharge except for just cause, which shall include but not be limited to; incompetence, dishonesty, intoxication, falsifying records or time cards, excessive lateness and absenteeism, fighting, stealing, gambling, willful destruction of Employer's property, use or possession of drugs on Employer's property, physical or verbal client abuse or failure to report an accident.

3. All employees may have a Union Representative or Shop Steward present, prior to any disciplinary meeting.

4. In the event that an employee is being disciplined or discharged for any reason, the Employer shall submit in writing to both the Union and the employee the reason for such action, no later than twenty-four (24) hours after the incident.

## ARTICLE XII
## GRIEVANCE PROCEDURE

1. Any and all disputes, differences and grievances (hereinafter referred to as grievances) between the Union and the Employer shall be taken up as follows:
    a. Any employee or group of employees feeling aggrieved may present through the Union Representative, such grievance for adjustment with the immediate supervisor involved, within three (3) business days after the incident. In the event that the grievance is not adjusted within two (2) working days, after the notice of grievance has been filed, it shall be reduced to writing and submitted to the Employer;
    b. If no satisfactory settlement is reached to within five (5) working days, then the dispute, difference or grievance shall be submitted to arbitration as set forth in Article XIII.

2. Answers to all grievances shall be in writing and submitted to the Union within the time limits herein above set forth.

3. Any employee shall have the right to a Union Representative at all grievance meeting with the Employer.

## ARTICLE XIII
## ARBITRATION PROCEDURE

1. In the event that the parties can not resolve a grievance through the procedures set forth above in Article XII, and choose to submit the grievance to arbitration, they shall request that the American Arbitration Association submit a panel of arbitrators in accordance with its regular procedures, unless, in the interim, the parties have mutually agreed upon an arbitrator.

8

2. The arbitrator shall have no authority to add to, subtract from or modify any provisions of the Agreement; his authority being limited to the interpretation of this Agreement.

3. Within twenty (20) calendar days of the closing of the proceedings and issuance of an award, the arbitrator's award shall be final and binding on both parties. In no case shall the hearing by the arbitrator be delayed by either party for a period of more than sixty (60) calendar days after the A.A.A. is notified of the intent of the parties of arbitrate, unless mutually agreed to by both parties.

## ARTICLE XIV
## NO-STRIKE / NO LOCKOUT

1. The Company agrees that there will be no cessation of work by reason of lockouts. The Union agrees that neither it, nor its members will take part in any strike, walkout, sit-down, picketing, sympathy picketing, slowdown, stoppage of work, retarding of work or boycotting, whether of a primary or secondary nature, or in any demonstration or other type of interference with the business of the Employer.

2. During the term of this Agreement, the Union and the employees covered by this Agreement will continue to perform their duties in the event that any other employees, labor organizations or other persons were to engage in any strike, picketing, walkout, boycotting, whether of a primary or secondary nature.

3. The Union expressly recognizes that the Company has the right to discipline or discharge employees for the violation of this Article.

## ARTICLE XV
## WAGES

1. Effective March 1st, 2005, each doormen and elevator operator shall receive an increase of fifty ($0.50) cents per hour.

2. Effective January 1st, 2006, each doormen and elevator operator shall receive an increase of fifty ($0.50) cents per hour.

3. Effective January 1st, 2007, each doormen and elevator operator shall receive an increase of fifty ($0.50) cents per hour.

4. No porter employed for more than sixty (60) calendar days shall earn less than $375.00 per week.

5. The Employer retains the right to grant merit pay to eligible employees.

## ARTICLE XVI
## APARTMENT

1. ~~As part of the compensation package, the Employer may provide an apartment on the premises to each porter. The Employer may also, at its discretion, provide an apartment to one or more doormen. These apartments are provided only so long as the employee is employed by the Employer. The apartment must be vacated within three (3) days of the termination of employment for any reason (resignation, discharge, layoff, etc.). If the employee performs any work for the Employer during the three (3) day periods, the employee shall be paid at his regularly hourly rate of pay.~~

2. The Employer may require an employee to vacate his apartment immediately in exceptional cases, where his continued presence might jeopardize the tenants, employees, or the building, where the proper operation of the building requires the immediate employment of a replacement.

3. Employees must also vacate his apartment within three (3) days of notice of any of the following:
    a. transfer of legal title to the building;
    b. change in the Employer;
    c. Reduction in force.

4. Any employee who is provided with an apartment may not rely on any laws, which grant tenants any rights to remain in an apartment. It is agreed that the employees are not to be considered tenants under any law.

5. If the porter does not receive an apartment, his minimum wage shall be $500.00 per week, during his first year of employment, and $600.00 per week thereafter.

6. The Employer has the right to require employees to change apartments.

## ARTICLE XVII
## HEALTH FUND

1. Effective March 1st, 2005, the Employer shall contribute to the District 6 Health Fund:
    a. Three hundred ($300.00) dollars, per employee, per month, for single coverage.
    b. Five hundred twenty-five ($525.00), per month, for employee and spouse coverage.
    c. Seven hundred sixty-five ($765.00), per month, for employee and their family coverage.

2. Effective January 1st, 2006, the Employer shall contribute to the District 6 Health Fund:

10

    a. Three hundred twenty-five ($325.00) dollars, per employee, per month, for single coverage.
    b. Five hundred fifty ($550.00) dollars, per month, for employee and spouse coverage.
    c. Seven hundred ninety ($790.00) dollars, per month, for employee and their family coverage.

3. Effective January 1st, 2007, the Employer shall contribute to the District 6 Health Fund:
    a. Three hundred fifty ($350.00) dollars, per employee, per month, for single coverage.
    b. Five hundred seventy-five ($575.00) dollars, per month, for employee and spouse coverage.
    c. Eight hundred fifteen ($815.00) dollars, per month, for employee and their family coverage.

4. The Union warrants that the "Fund" is now, and continues to be during the term of this Agreement, and any renewal or extension thereof, in full and complete compliance with the Labor Management Relations Act of 1947, as amended, and as same may be from time to time amended. The Employer Retirement Income Security Act of 1974, as amended, and as same may be from time to time amended and all other laws, statute, rules, regulations, orders and each and every other applicable authority.

5. The Union warrants that the "Fund" is now qualified for, and will continue during the term of this Agreement. Any renewal or extension thereof, to at all times qualify for approval by the Internal Revenue Service of the U.S. Treasury Department so as to allow the Company an income tax deduction for the full amount paid to said Fund.

6. The contributions shall be made monthly for the duration of this Agreement and mailed to the Union no later than the fifteenth (15th) of each month.

7. The Employer must notify the Union of any changes of employment status of its employees.

## ARTICLE XVIII
## VACATION

1. Upon completion of the employee's first full year of employment, and for the first three years of employment, each employee will be entitled to five (5) days vacation with pay, per year.

2. Employees with three (3) and four (4) years of service are entitled to seven (7) days vacation with pay.

11

3. Employees with five (5) years of service or more are entitled to ten (10) days vacation with pay.

4. Any employee taking vacation during which a granted holiday occurs, shall be given an additional day of paid vacation or pay in lieu thereof.

5. Vacation are earned, and in any event that an employee quits with two weeks notice, or is terminated or laid off prior to the vacation for that year, shall receive his/her full pro-rated vacation pay due at the time he/she either leaves, is terminated, or laid off.

6. Choice of vacation shall be granted on the basis of seniority and must be submitted in writing at least thirty (30) days prior to the first day that the requested vacation is set to begin.

7. An employee may elect to combine available sick leave with vacation hours, as long as timely written requested, as discussed above is submitted to the Employer for approval.

8. Vacation time shall not accrue and must be used in the year it is accumulated.

9. The employee's anniversary date, each year, shall be the cut off date for computation of vacation pay.

## ARTICLE XIX
## HOLIDAYS

1. Non-probationary employees employed on or after the effective date of this Agreement, shall receive the following holidays with pay, at the employee's regular straight time hourly rate if the holiday falls on the employee's day off:
   - a. New Year's Day
   - b. President's Day
   - c. Memorial Day
   - d. Independence Day
   - e. Labor Day
   - F. Thanksgiving Day

2. An employee who works on any of the aforesaid holidays shall receive pay at the rate of double time, instead of holiday pay.

3. If any holiday falls during a non-probationary employee's vacation, the employee shall receive an additional day's pay, at his/her regular straight time hourly rate.

4. To be qualified for holiday pay, an employee must work their regularly scheduled workday preceding the holiday and their regularly scheduled workday following the holiday.

12

5.  Holiday pay shall not be granted to employees who are on any of the contractual leaves of absence provided herein, lay off, or otherwise not actively employed by the Employer at the time the holiday falls.

6.  An employee who is scheduled to work on any of the contractual holidays set forth herein and does not work on that day, shall forfeit holiday pay, unless such absence is caused by bona fide illness as substantiated by a doctor's certificate, or is otherwise excused by the Employer. Holiday pay shall be forfeited if such proof is requested and not furnished.

7.  Employee shall be scheduled to work on seniority rotation, with the right of refusal going to the most senior employee.

## ARTICLE XX
## SICK DAYS

1.  All employees shall be entitled to two (2) paid sick leave, after completing one (1) year of employment, accruable on the basis of one (1) day of paid sick leave, per each six (6) months worked.

2.  All employees shall be entitled to three (3) paid sick leave, after completing two (2) years of employment, accruable on the basis of one (1) day of paid sick leave, per each four (4) months worked.

3.  The Employer may require proof of illness, if an employee is on sick leave for consecutive days or more.

4.  All unused sick leave shall be paid to all employees at the end of the year or when termination, sale, or lease of the incumbent Company, or when an employee leaves the enrollment of the Company, whichever occurs first.

5.  Unused sick / personal days shall not be carried over from year-to-year.

## ARTICLE XXI
## JURY DUTY

1.  Upon completion of his/her probationary period, an employee required to serve as a juror in court of record, shall be paid his/her regular earnings on the basis of a seven (7) hour day, and a thirty-five (35) hour week, for a maximum of five (5) days, for the time lost from his/her straight time work schedule.

2.  The Employer has the option of requiring proof of such service by an employee, and notice must be given to the Employer from the County Clerk's Office, as to the number of days the employee served on jury duty and the amount paid for those days.

3. Employees must show the jury duty summons to the Employer as soon as possible so that the Employer may make arrangements to accommodate their absence.

4. The Company will continue to provide health insurance benefits for the full term of the jury duty absence. Vacation, sick leave, holidays, and any monetary benefits will continue to accrue during jury duty leave.

## ARTICLE XXII
## BEREAVEMENT LEAVE

1. Bereavement leave shall be granted for three (3) consecutive days with pay, for non-probationary employees, in the case of death of members in the immediate family (wife, husband, or domestic partner, child, parent, grandparent, grandchild, sibling, current parent-in-law, son or daughter-in-law) of an employee.

2. Employee may, with the Employer's approval, use any available paid leave for additional time off as necessary.

3. Payment shall be made only for such, of the three (3) days that the bereavement leaves falls upon a regular scheduled working day. The Employer reserves the right to request proof of death.

4. Where the employee is required to travel, or where other circumstances warrant consideration, additional time off may be granted without pay. Evidence of death and travel tickets may be required.

## ARTICLE XXIII
## SEXUAL HARASSMENT

1. The Employer is committed to the principle that no employee shall be subject to sexual harassment, in any form. Sexual harassment is defined as unwelcome sexual advances, requests for sexual favor, and other verbal or physical behavior of a sexual nature.

2. Allegations of sexual harassment will be investigated. Substantiated sexual harassment will be dealt with disciplinary action, up to and including termination.

3. Information regarding any specific incident is confidential within the boundaries of the fact-finding process.

## ARTICLE XXIV
## INDIVIDUAL AGREEMENTS PROHIBITED

1. The Employer shall not enter into any agreements with either individual or groups of employees. In the event such an agreement is entered into, the agreement shall be deemed null and void.

## ARTICLE XXV
## UNION RESPONSIBILITY

1. The Union recognizes the responsibilities imposed upon it as the exclusive bargaining agent of the employees. It realizes that in order to provide maximum opportunities for continuing employment, good working conditions, and better-than-average wages, the Company must be in a strong market position, which means that it must produce at the lowest possible cost consistent with fair labor standards.

2. The Union, therefore, agrees that it will not oppose the efforts of the Company to obtain a full day of work on the part of its members. It further agrees that it will not oppose the Company in its efforts to eliminate waste in production; conserve materials and supplies; improve the quality or workmanship; prevent accidents and strengthen goodwill between the Company, the employee, the customer, and the public.

## ARTICLE XXVI
## INVALIDATION PROVISION

1. If any of the terms and conditions of this Agreement is in violation of any state or federal law, court decision, or decree, then to the extent of any violation, this Agreement shall be null and void.

2. If any portion of this Agreement is declared illegal, it shall not in any way affect the remaining provisions of this Agreement.

## ARTICLE XXVII
## SUCCESSOR PROVISION

1. This Agreement shall be binding upon the parties hereto and upon their successors and assigns.

## ARTICLE XXVIII
## WHOLE AGREEMENT

1. The Parties hereto agree and understand that this Agreement has been reached as a result of good faith collective bargaining concerning wages, hours, and other terms and conditions of employment of the employees in the bargaining unit heretofore defined. Therefore, the provisions contained in this Agreement shall constitute the whole and entire Agreement between the Parties, and each Party expressly waives the right to request bargaining concerning any item, matter or condition which was or could have been raised in the course of the negotiations of this Agreement.

2. Amendments to this Agreement or discussion relating thereto shall only be by mutual consent.

## ARTICLE XXIX
## DURATION OF AGREEMENT

1. **THIS AGREEMENT SHALL** become effective from January 1, 2005, and remain operative and binding upon the Parties hereto for a period of three (3) years, and shall continue in full force and effect until the close of business day, on December 31, 2007.

2. **THIS AGREEMENT SHALL** automatically renew for an additional period of one (1) year, unless either Party notifies the other in writing, by certified mail, return receipt requested, of its intention to renew the contract. Notification must be not less than sixty (60) calendar days, and not more than ninety (90) calendar days prior to the expiration of this Agreement.

3. **IN WITNESS, WHEREOF,** the Parties hereto have set their hands and seal this eighth (8th) day of January, 2005.

For: Realty Corp., LLC

By: _____

For: District 6, I.U.J.S.T.H.E

By: _____

16