UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARD OF TRUSTEES OF THE DISTRICT 6 HEALTH PLAN,<br><br>          Plaintiffs,<br><br>     -against-<br><br>PINNACLE MANAGING CO., LLC; REALTY CORP., LLC, a/k/a 3647 REALTY CO., LLC, a/k/a 3657 REALTY CO., LLC, a/k/a 3647 AND 3657 REALTY CO., LLC; and WIENER REALTY, LLC,<br><br>          Defendants. | 07 Civ. 6391 (GBD) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS AND
TO STRIKE FIRST AND SECOND AFFIRMATIVE DEFENSES**

            BARNES, IACCARINO, VIRGINIA,
            AMBINDER & SHEPHERD, PLLC
             Charles R. Virginia (CV 8214)
             Marc A. Tenenbaum (MT 3426)
            Trinity Centre
            111 Broadway
            Suite 1403
            New York, New York 10006
            (212) 943-9080

September 15, 2008         Attorneys for Plaintiffs

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ………………………………………………………. 2

ARGUMENT …………………………………………………………………….. 3

    I.    THE EMPLOYERS FAIL TO STATE A COGNIZABLE CLAIM FOR FRAUD IN THE EXECUTION ……………………... 3

    II.    THE EMPLOYERS CANNOT SUE THE PLAN FOR MONEY DAMAGES UNDER FEDERAL COMMON LAW ……... 5

    III.    THE EMPLOYERS' PLEADINGS ARE PROCEDURALLY DEFICIENT ……………………………………………………... 7

CONCLUSION …………………………………………………………………. 8

## INTRODUCTION

The defendants' counterclaims continue to present a moving target. On October 15, 2007, defendants Pinnacle Managing Co., LLC, Realty Corp., LLC, and Wiener Realty, LLC (the "Employers") filed a counterclaim against the trustees of the District 6 Health Plan (the "Plan") for breach of contract. On March 31, 2008, Plaintiffs moved to dismiss that counterclaim on the ground that it was preempted by ERISA. The Employers then abandoned their breach-of-contract argument.

On June 23, 2008, the Employers filed a new set of counterclaims alleging that the Plan committed fraud. On August 5, 2008, Plaintiffs moved to dismiss the Employers' fraud claims on the grounds of ERISA preemption and failure to plead fraud with particularity.

On August 22, 2008, the Employers filed a proposed third set of counterclaims, and simultaneously filed a memorandum of law in opposition to Plaintiffs' motion to dismiss their second set of counterclaims. In that memorandum, the Employers implicitly conceded that their second set of counterclaims failed to plead fraud with particularity, but argued that their proposed third set of counterclaims would survive a motion to dismiss.

Rule 15(a) of the Federal Rules of Civil Procedure provides that a party is entitled to amend its pleadings once as a matter of course. The Employers exercised that right when they filed their second set of counterclaims. The Employers are not entitled to file a third set of counterclaims without leave of Court. Leave to amend "should not be granted if it would be futile." *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate*, 132 F.R.D. 139, 141 (S.D.N.Y. 1990) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In this case, leave to amend would be futile for the reasons discussed in Plaintiffs' main memorandum of law dated August 4, 2008, and for the additional reasons discussed below.

## STATEMENT OF FACTS

Under Rule 12(b)(6), the counterclaims' factual allegations are to be accepted as true for purposes of Plaintiffs' motion to dismiss. However, the Employers have taken the liberty of supplementing their allegations with misleading extrinsic evidence. Specifically, the Employers have submitted copies of CBAs that they signed with the Union in December 2002 and January 2005, without mentioning that they previously signed a CBA with the Union in 1999. The 1999 CBA, which remained in effect until 2002, expressly required the Employers to contribute to the District 6 Health Plan. (Declaration of Marc A. Tenenbaum ("Tenenbaum Dec.," ¶ 3 & Ex. 1.) Therefore, the Employers were no strangers to the Plan when they signed new CBAs in 2002 and 2005. The Employers do not allege that there were any problems with the Plan between 1999 and 2002. If the Court is inclined to take the 2002 and 2005 CBAs into account in adjudicating Plaintiffs' motion to dismiss, then the Court should also take the 1999 CBA into account.

In addition, the Court should take judicial notice of Forms 5500 and the accompanying financial statements on file with the United States Department of Labor, which demonstrate that the Plan provided millions of dollars in benefits throughout the relevant period. (Tenenbaum Dec., Ex. ¶¶ 4-8 & Ex. 2-6.) These materials conclusively refute the Employers' frivolous allegations that no Plan existed, or that the Plan did not provide any benefits. Furthermore, the Court should not accept as true any of the so-called "facts" proffered in the Employers' memorandum of law that are omitted from their counterclaims, such as the outright falsehood that, "[b]eginning in 2007," William Perry "disappeared from the face of the Earth." (Mem. at 7.) The Employers are well aware that that statement is false because their owner, Joel Wiener, personally met with Perry in 2008.

**ARGUMENT**

**I.    THE EMPLOYERS FAIL TO STATE A COGNIZABLE
       CLAIM FOR FRAUD IN THE EXECUTION**

As discussed at pages 7-9 of Plaintiffs' main memorandum of law, ERISA directly conflicts with and preempts the Employers' second set of counterclaims because fraud in the inducement is not a legally viable defense to an action to collect delinquent employer contributions to an employee benefit plan. In an effort to escape ERISA preemption, the Employers incorrectly argue that their third set of counterclaims alleges fraud in the execution. The counterclaims allege that the Union's president, William Perry, tricked the Employers into signing the CBAs by stating that there was a Plan that complied with certain legal requirements and would provide certain health benefits. In substance, this is a run-of-the-mill claim for fraud in the inducement. It is not a genuine claim for fraud in the execution. This Court should reject the Employers' desperate attempt "to bootstrap the elements of 'fraud in the inducement' into a 'fraud in the execution' claim." *Iron Workers' Local No. 25 Pension Fund v. Allied Fence and Security Systems, Inc.*, 922 F. Supp. 1250, 1260 (E.D. Mich. 1996).

"Fraud in the execution occurs where there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31-32 (2d Cir. 1997) (citation omitted). Thus, fraud in the execution takes place if a party is led "'to believe that the act which he does is something other than it actually is,'" such as when he signs a document after being told that it contains provisions that it does not actually contain. *Id.* at 32 (citation omitted). "For example, one who signs a promissory note reasonably believing that he only gave an autograph is not liable on the note." *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984). Likewise,

the "'surreptitious substitution of one paper for another'" constitutes fraud in the execution. *Hetchkop*, 116 F.3d at 32 (citation omitted).

In the instant case, the Employers do not allege that anyone secretly swapped one document for another, nor do the Employers allege that they were unaware of the contents of the documents that they signed. Rather, it is undisputed that the Employers were fully aware that they were signing CBAs that required them to pay specified wages to their employees, to contribute specified amounts to the Plan, and to comply with other specified terms of employment. The Employers fail to state a claim for fraud in the execution because they have not alleged that anyone led them to believe that the CBAs contained any provisions that they did not actually contain. *See, e.g., Southwest Administrators, Inc. v. Rozay's Transfer*, 791 F.2d 769, 774-75 (9th Cir. 1986) (rejecting employer's claim of fraud in the execution because there was "no confusion as to the actual contents of the agreement") (cited with approval in *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990)).

At page 21 of their memorandum of law, the Employers argue that "the misrepresentation as to whether or not a real health plan *existed* was certainly an 'essential term' of both the Broadway CBA and the Worth CBA." (Emphasis in original.) That argument is based on the erroneous premise that fraud in the execution occurs whenever there is a misrepresentation that merely *relates to the subject matter* of the essential terms of a proposed contract. The Employers cite no authority for that proposition, nor can they. If the premise of the Employers' argument were correct, then there would be no meaningful distinction between fraud in the inducement and fraud in the execution because virtually every claim of fraud in the inducement involves a misrepresentation that relates to the subject matter of the essential terms of a proposed contract. As discussed above and in Plaintiffs' main memorandum of law, fraud in the execution is a much

narrower concept than fraud in the inducement, and the Employers' allegations fall into the latter category.

## II. THE EMPLOYERS CANNOT SUE THE PLAN FOR MONEY DAMAGES UNDER FEDERAL COMMON LAW

Next, in an effort to circumvent both ERISA's anti-inurement provision and the Employers' lack of standing to sue under ERISA, the Employers argue that they are entitled to sue the Plan "based on equitable principles . . . under federal common law." (Mem. at 19.) Specifically, the Employers argue that (i) they contributed money to the Plan; (ii) "the Plan was never entitled to the funds in the first place"; and (iii) they are entitled to "restitution and/or damages to make [them] whole." (Mem. at 17, 19.) The Employers rely exclusively on cases from the First, Third, and Fifth Circuits decided between 1988 and 1992.[1]

All of the cases upon which the Employers rely are inconsistent with the United States Supreme Court's subsequent decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), which limited the scope of relief available under ERISA. The Court distinguished between "restitution in equity," which is a permissible remedy under ERISA, and "restitution at law," which is not a permissible remedy. *Id.* at 210-18. The Court explained that "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213 (emphasis in original). "A court of equity could then order a defendant to transfer title (in the case of a constructive trust) or to give a security interest (in the case of an equitable lien) to a plaintiff who was, in the eyes of equity, the true owner." *Id.* "But where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the

---

[1] *Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts*, 954 F.2d 299 (5th Cir. 1992); *Kwatcher v. Massachusetts Serv. Employees Pension Fund*, 879 F.2d 957 (1st Cir. 1989); *Plucinski v. I.A.M. Nat'l Pension Fund*, 875 F.2d 1052 (3d Cir. 1989); *Carl Colteryahn Dairy, Inc. v. Western Penn. Teamsters & Employers Pension Fund*, 847 F.2d 113 (3d Cir. 1988).

plantiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust or an equitable lien upon other property of the [defendant]." *Id.* at 213-14 (citation omitted). "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

In the instant case, the Employers have not alleged that "money or property identified as belonging in good conscience to the [Employers] could clearly be traced to *particular funds or property in the [Plan's] possession.*" *Id.* at 213 (emphasis added). Indeed, the Employers expressly admit that they "do not know what happened to the contributions they paid into the Plan." (Mem. at 3.) Therefore, the remedy of money damages that the Employers seek is impermissible under ERISA because it constitutes "restitution at law" rather than "restitution in equity." *Knudson*, 534 U.S. at 214. Furthermore, the *Knudson* Court expressed reluctance "'to tamper with the enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Id.* at 209.

As a result of *Knudson*, the United States Court of Appeals for the Second Circuit has made clear that the federal courts "are no longer free to fill in unwritten gaps in ERISA's civil remedies." *Gersosa v. Savasta & Co.*, 329 F.3d 317, 322-23 (2d Cir. 2003). Thus, the Second Circuit has expressly rejected the notion – advocated by the Employers here – that "ERISA's remedies must be supplemented by the federal common law." *Nechis v. Oxford Health Plans*, 421 F.3d 96, 104 (2d Cir. 2005). The Second Circuit has held that such supplemental remedies are impermissible even if they would prevent "unjust enrichment" or provide a party with "the benefit of the bargain." *Id.*

In particular, the Second Circuit has expressly held that neither ERISA nor federal common law provides a remedy for "restitution of premiums paid" unless those amounts are

"segregated in a separate account" or otherwise traceable "'to particular funds or property in the defendant's possession.'" *Id.* at 103-04 (quoting *Knudson*, 534 U.S. at 213). As noted above, the Employers' counterclaims do not, and cannot, allege that money the Employers contributed to the Plan was segregated in a separate account or is otherwise traceable to particular assets currently in the Plan's possession. Moreover, as a multiemployer plan, the Plan had no obligation to segregate the amounts contributed by the Employers from the Plan's general assets. Accordingly, under *Knudson* and its progeny in the Second Circuit, the Employers are foreclosed from pursuing a claim against the Plan pursuant to federal common law. *See also Union Labor Life Ins. Co. v. Olsten Corp. Health and Welfare Benefit Plan*, 2008 WL 817112, at *16-*17 (E.D.N.Y. Mar. 26, 2008) (rejecting federal common law claims for restitution and unjust enrichment where payments could not be traced to specifically identifiable property); *Vacca v. Trinitas Hosp.*, 2006 WL 3314637, at *4-*5 (E.D.N.Y. Nov. 14, 2006) (same).[2]

### III.  THE EMPLOYERS' PLEADINGS ARE PROCEDURALLY DEFICIENT

In addition, although the Employers have amended their counterclaims to provide additional detail, their third set of counterclaims still fails to "state with particularity the circumstances constituting fraud," as required by Rule 9(b) of the Federal Rules of Civil Procedure. Indeed, in some respects, the Employers have not even set forth "a short and plain statement of the claim," as required by Rule 8(a)(2). For example, revised paragraphs 40 and 42 allege in very general terms that "Mr. Perry represented to Mr. Wiener that the Plan was in compliance with various federal and state regulations, including those promulgated by the Labor Management Relations Act, ERISA, the Internal Revenue Code and the Department of Labor." Paragraph 46 alleges, without explanation, that "Mr. Perry's representations were untrue." The

---

[2] Moreover, even prior to *Knudson*, the Second Circuit had declined to create "an ERISA common law of unjust enrichment," *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1419 (2d Cir. 1985), and this Court had held that neither ERISA nor federal common law authorized employers to sue multiemployer plans for refunds of contributions. *Amalgamated Cotton Garment & Allied Industries Retirement Fund v. Youngworld Stores Group, Inc.*, 2001 WL 314650 (S.D.N.Y. Mar. 30, 2001).

Employers do not bother to specify which portions of these voluminous statutes and regulations the Plan allegedly contravened, nor do they identify any specific actions or omissions that allegedly constituted those violations. The counterclaims also fail to state how the Employers were allegedly harmed by any such violations. Furthermore, although the Employers make the startling proclamation that the Plan did not really exist, the Employers do not allege any specific facts that refute the publicly available records on file with the Department of Labor showing that, throughout the relevant period, the Plan not only existed, but also provided millions of dollars in benefits to participants and beneficiaries. Therefore, even if the Employers somehow had a valid cause of action against the Plan as a matter of substantive law (which they do not), their counterclaims should be dismissed for failure to comply with Rules 8(a)(2) and 9(b).

## CONCLUSION

For the reasons set forth above and in Plaintiffs' main memorandum of law, Plaintiffs' Motion to Dismiss Counterclaims and to Strike First and Second Affirmative Defenses should be granted, and the Employers should not be permitted to file their proposed third set of counterclaims.

Dated: New York, New York
September 15, 2008

Respectfully submitted,

BARNES, IACCARINO, VIRGINIA,
AMBINDER & SHEPHERD, PLLC

By:_____/s/_____
    Charles R. Virginia (CV 8214)
    Marc A. Tenenbaum (MT 3426)
Trinity Centre
111 Broadway, Suite 1403
New York, New York 10006
(212) 943-9080

Attorneys for Plaintiffs